Charles SHEARER, John T. Haight, Jr., Carajou Shooting Club, Inc., Thiebeau Hunting Club, Inc., Rock River Basin Wildlife & Wetland Association, Inc., Petitioners-Appellants,

v.

Wisconsin DEPARTMENT OF NATURAL RESOURCES, Respondent.

COUNTY OF ROCK, Petitioner-Appellant,

v.

Wisconsin DEPARTMENT OF NATURAL RESOURCES, Respondent.

Court of Appeals

*No. 87-0268. Submitted on briefs February 6, 1989.—Decided April 6, 1989.*

(Also reported in 443 N.W.2d 669.)

For the petitioners-appellants Charles Shearer, et al., the cause was submitted on the briefs of *Glenn C. Reynolds* and *O'Brien & Reynolds, S.C.,* of Madison.

For the petitioner-appellant County of Rock, the cause was submitted on the brief of *James H. Fowler, III,* of Janesville.

For the respondent the cause was submitted on the brief of *Donald J. Hanaway,* attorney general, and *Maryann Sumi,* assistant attorney general.

Brief of amicus curiae was filed by *Kathleen M. Falk,* of Madison, on behalf of Wisconsin Public Intervenor.

Before Gartzke, P.J., Dykman and Eich, JJ.

EICH, J.    Charles Shearer and other individuals and associations owning land abutting Lake Koshkonong (collectively, "Shearer") appeal from a judgment and an order affirming a decision of the Department of Natural Resources (DNR) which established water levels for the lake. The order also directed Rock County, the owner of the dam at the foot of the lake and also an appellant in this case, to operate and maintain the dam so as to attain the specified levels.

We see the dispositive issue as whether the department was required to grant Shearer's request for a "contested case hearing" pursuant to sec. 227.42, Stats.[1] Because we conclude that it was, we reverse the judgment and order insofar as they affirm the department's

---

[1] All relevant statutes in effect in 1982 remain unchanged. Consequently, all statutory references will be to the 1987–88 volume.

lake level order and its denial of Shearer's hearing request. We also conclude that the trial court lacked jurisdiction to consider Rock County's claim that it, too, was entitled to a contested case hearing before the department and we therefore affirm the trial court's dismissal of that claim.

The material facts are not in dispute. Lake Koshkonong was created by the construction of a dam on the Rock River at Indianford, a location several miles downriver from the present lake, in 1851. Lake Koshkonong is both large and shallow, and disputes over its water levels—particularly complaints by riparian property owners that their lands were being lost to high waters—have been ongoing ever since. *See State ex rel. Att'y Gen. v. Norcross,* 132 Wis. 534, 112 N.W. 40 (1907).

In 1982, the department, on its own motion and without public hearing, issued an order establishing seasonal water levels for Lake Koshkonong and directing Rock County to make certain improvements to the Indianford Dam. The order was promulgated under sec. 31.02(1), Stats., which authorizes the department, "in the interest of public rights in navigable waters or to promote safety and protect life, health and property [to] regulate and control the level and flow of water in all navigable waters," and it contains several findings of fact and conclusions of law outlining the reasons for the department's action.

Some time earlier, Shearer and the other landowners, who were aware of the department's intentions to establish the water levels, wrote to the agency requesting, among other things, that a "contested case hearing"[2] be held on the proposal before any order was issued.

---

[2] The requirements of a "contested case hearing" are set forth in sec. 227.44, Stats.

They claimed entitlement to such a hearing under several statutes: sec. 31.13, Stats., which authorizes hearings on requests to "raise or enlarge" dams; sec. 144.025(7), Stats., which provides for hearings on DNR orders issued under ch. 144; and sec. 227.42, Stats., which generally entitles persons whose "substantial interest[s]" are injured or threatened by the action of a state agency to a hearing.

The department took no action on Shearer's hearing request prior to issuing the order. Then, several weeks later, the department wrote to Shearer, informing him that his request was being denied on grounds that: (1) the statute under which the department proceeded, sec. 31.02, Stats., did not contain any provisions for such hearings; (2) sec. 31.13 did not apply because the department's action did not involve "a raising or enlarging of an existing dam" within the meaning of that statute; (3) sec. 144.025(7), Stats., did not apply because the department's action was not being taken under ch. 144; and (4) sec. 227.42 did not apply because, under *Town of Two Rivers v. DNR*, 105 Wis. 2d 721, 315 N.W.2d 377 (Ct. App. 1981), *overruled, Milwaukee Met. Sewerage Dist. v. DNR*, 126 Wis. 2d 63, 72, 375 N.W.2d 648, 652 (1985), a party must have the right to a hearing under some other provision of the statutes in order to receive a contested case hearing under sec. 227.42.

Shearer petitioned the circuit court for review of both the department's order setting the lake levels and its decision denying his request for hearing. Rock County, the owner of the dam, also petitioned for review of the lake level order and joined in Shearer's request that the department be directed to hold a contested case hearing.

Shearer and Rock County sought a temporary injunction staying implementation of the DNR order.

The court held seven days of hearings on the request, during which it heard the testimony of dozens of witnesses, both lay and expert, on the history of the lake and dam and the factors and reasons underlying both the DNR order and Shearer's and the county's objections to it. The court then denied the request for injunctional relief on grounds that, in the court's opinion, Shearer and the county had little likelihood of succeeding on the merits of their petitions for review.

The parties then briefed the merits of the petitions for review and, on February 5, 1986, the trial court dismissed them in a lengthy and considered decision, concluding that neither party was entitled to a contested case hearing, and that the DNR order should be affirmed because it was supported by the evidence adduced at the lengthy court hearings on the earlier motions for temporary relief. Other facts will be discussed below.

We consider first the denial of Shearer's request for a contested case hearing. Whether Shearer has a right to such a hearing under sec. 227.42, Stats., is a question of law which we decide independently, without deference to the trial court's decision. *See Nottelson v. ILHR Department,* 94 Wis. 2d 106, 115-16, 287 N.W.2d 763, 768 (1980) (whether the facts fulfill a particular legal standard is a question of law).

We need not consider whether, as various parties and *amicus curiae* argue, secs. 31.02 or 144.025, Stats.—or even the historic "public trust doctrine"—give Shearer the right to a hearing on the lake level order, for we believe sec. 227.42(1), Stats., provides that right. The statute reads as follows:

> In addition to any other right provided by law, any person filing a written request with an agency for

hearing shall have the right to a hearing which shall be treated as a contested case if:

(a) A substantial interest of the person is injured in fact or threatened with injury by agency action or inaction;

(b) There is no evidence of legislative intent that the interest is not to be protected;

(c) The injury to the person requesting a hearing is different in kind or degree from injury to the general public caused by the agency action or inaction; and

(d) There is a dispute of material fact.

Shearer's request for the hearing asserted that, as riparian owners, he and the other petitioners met the enumerated requirements of the statute because:

The [DNR] proposal . . . threatens these land owners with injury to their land which has suffered extensive damage over the past twenty years due to the existence of the Indianford Dam. There is no evidence of legislative intent which indicates that these property rights should not be protected. Injury to land is without question, peculiar to the land owner; and finally, as our previous written comments on these proposals suggest, there are enormous disputes of material fact.

Shearer's petition for review explains the basis for the hearing request in greater detail. Specifically, Shearer alleged that:

10. Since 1963, the petitioners have lost hundreds of acres of wetlands and shoreline because of high water levels on Lake Koshkonong.

. . ..

13. [The placement of flashboards on the dam, as ordered by DNR] will . . . cause higher water levels . . . on Lake Koshkonong and contribute to

the gradual destruction of wetlands, wildlife habitat and agricultural land contiguous to Lake Koshkonong.

14. These flashboards will also contribute to increased septic system failure in the vicinity of Lake Koshkonong and a long term decrease in overall water quality of Lake Koshkonong.

15. The petitioners are aggrieved by [DNR's] decision to increase water levels at Lake Koshkonong in that they are the owners of wetlands, wildlife habitat and agricultural land that is threatened with destruction. The petitioners are also aggrieved in that they own homes with septic systems that are subject to failure if water levels are raised on Lake Koshkonong and because they have an interest in Lake Koshkonong's water quality.

. . ..
19. . . ..

b. If the flashboards are installed . . . increases in water level in Lake Koshkonong will cause the petitioners[ ] irreparable harm by contributing to the destruction of their property as well as causing the permanent d[y]sfunction of already marginal septic systems.

c. Increases in water levels in Lake Koshkonong will also upset the lake ecology and jeopardize aquatic, avi[a]n and terrestrial wildlife.

While the case was pending in circuit court, the supreme court overruled *Town of Two Rivers,* the case on which DNR had based its decision to deny Shearer's sec. 227.42, Stats., hearing request. In *Milwaukee Met. Sewerage Dist. v. DNR,* 126 Wis. 2d 63, 72, 75, 375 N.W.2d 648, 652, 653 (1985), the court held that sec. 227.42 does not require the person seeking a hearing to show that he or she has a "preexisting hearing right" under another statute, but that sec. 227.42 itself "creates an independent right to a hearing conditioned only on

. . . satisfaction of the elements outlined in [the statute]."

Applying *Milwaukee Met. Sewerage Dist.,* and again relying on the volumes of testimony and exhibits gleaned from the hearings on the earlier motion for a temporary injunction, the trial court ruled that the department had properly denied Shearer's request for hearing under sec. 227.42, Stats., because, in the court's opinion, he had not established that his or his co-petitioners' substantial interests would be harmed or threatened with harm as a result of the DNR order. The court, characterizing the DNR order as an attempt to "keep the impoundment more stable, [and] to minimize the eroding power of water in motion to the extent possible by manipulation of the dam," reasoned that the order would thus provide "increased stability" for the lake, which "ought to slow the process" of the loss of riparian land to the water. The court then stated: "That is not an injury. That is not a threat of injury."

In reaching its conclusion, the court evaluated the testimony of the several witnesses testifying at the hearing, stating that it was "not persuaded . . . that there is a cause and effect relationship between [the ordered lake levels] and the detriment for which the petitioners contend." The court then stated that, in its view, the evidence did not "connect" the "new" levels to possible shoreland erosion, and concluded that, on the whole, Shearer and the other riparians "will be better protected if the DNR order is implemented." Finally, noting its reliance on the testimony of two experts—one who stated that he " 'wouldn't debate' " the DNR order, and another who "agreed [that] the DNR had addressed 'all of the factors' in its study" of the project—the court concluded its memorandum decision by stating that "no contested case hearing is necessary to determine what is

essentially an attempt to scientifically handle nature's idiosyncra[s]ies for the benefit of birdwatchers and boaters, landowners and hunters, fish and waterfowl, swimmers and sailboats."

The trial court's decision that Shearer was not entitled to a DNR hearing on the merits of the agency's proposal was based on its analysis of volumes of testimony and exhibits from its earlier hearings on Shearer's request for a temporary injunction. And that is the problem. The court hearing supplanted the agency hearing. The trial court, weighing and evaluating evidence on the merits of the agency's order—evidence that was often in conflict—and determining the weight and credibility to be assigned to the testimony of the several expert witnesses, became the factfinder in DNR's place. Then, on the basis of its own assessment of evidence taken at its own hearings, it ruled that Shearer had no right to a hearing under sec. 227.42, Stats.[3]

When the court ruled that DNR properly rejected Shearer's request for the sec. 227.42, Stats., hearing because, on the basis of the court's own assessment of the extensive evidence on the merits of DNR's ultimate order in the case, Shearer had not proved compliance with the statutory prerequisites for such a hearing, the cart overtook the horse and the court assumed the agency's functions. The extent of that assumption is made clear by the rather remarkable assertion in the attorney general's brief that the court hearings were the "functional equivalent" of a contested case hearing

---

[3] The court also ruled, on the basis of that same evidence, that the department's lake level order should be affirmed. In other words, the court was ruling that the order was supported by "substantial evidence in the record" within the meaning of sec. 227.57(6), Stats., where there was no evidentiary record and where, in fact, no evidence was ever taken before the department.

before the Department of Natural Resources.[4]

The statutes simply do not contemplate such a procedure, or such a result. Section 227.42, Stats., is designed to provide a hearing before the agency charged with making a decision within its area of expertise so that persons whose interests may be threatened with injury by the agency's proposed action can be heard on the question before the action is taken. Hearings before the circuit court, sitting as an appellate tribunal in review proceedings, are something else altogether.

> [J]udicial review of administrative decisions under ch. 227 envisages a review upon the record, and there is no trial de novo in the circuit court during such proceedings . . .. The whole procedure for appeal to the circuit court from administrative decisions is

---

[4] The dissent characterizes the trial court's action as no more than the traditional "deferential review" of a state agency decision. The fact is, however, that the court elicited and evaluated *its own* evidence on the merits of the project approved by the DNR and then ruled that that evidence—which, obviously, was never even heard, much less considered, by the agency—was adequate to support, among other things, the agency's determination that the case did not qualify as one warranting a contested case hearing under sec. 227.42, Stats. DNR, of course, never heard as much as a minute of the seven days of testimony taken by the trial court, for DNR never held a hearing in the case.

If the manner in which the trial court proceeded in this case is simply a "deferential review" of the agency's action, it is deference in the highest degree, for the court held a full seven days of hearings in order to gather evidence that would support the agency's ruling.

We continue to believe, as we hold in this opinion, that utilization of the statutes allowing trial courts to take limited evidence in administrative review proceedings is a much less cumbersome, much more appropriate, way of approaching the issues raised in this case.

163

summary in nature, since it ordinarily involves only a review of the proceeding before the agency, instead of a trial of fact issues. *Wis. Environmental Decade v. Public Service Comm.*, 79 Wis. 2d 161, 170, 255 N.W.2d 917, 923 (1977).

It makes little sense for either the court or DNR to hold full, contested hearings on the parties' ultimate positions in the case in order to determine whether the petitioners would be entitled to a contested hearing before the agency on those same issues. Neither the court nor the agency should be put to such efforts on the preliminary question of entitlement to the hearing.

Unfortunately, the statutes and the DNR rules provide scant guidance as to the extent to which persons requesting contested case hearings under sec. 227.42, Stats., must establish their right to them, either before the agency in the first instance, or in post-denial judicial review proceedings in circuit court. Presumably, DNR bases its acceptance or rejection of such requests on the statements in the applications themselves, as it did in this case, for all that is required by sec. 227.42(2), Stats., is that the denial be in writing and state the reasons therefor.[5] As a result, the reviewing court has little by way of a "record" on which to consider the validity of the agency's action. And, the trial court's actions in this case to the contrary, ch. 227 provides little authority for

---

[5] After this case was decided by the trial court, DNR adopted rules setting out the form and general content of requests for contested case hearings under sec. 227.42, Stats. The form simply asks the petitioner to describe the agency action, the interests claimed to be threatened or injured by the action, the evidence of legislative intent to protect the interests, the factual disputes involved in the case, and why or how the injury is different in kind or degree from injury to the general public. Wis. Adm. Code, sec. NR 2.05(5).

the reviewing court to hear evidence on its own to determine whether the petitioner is entitled to the hearing under the statutory criteria. The court is not wholly without such authority, however.

While sec. 227.57(1), Stats., limits the circuit court to review of the record made before the agency, it also contains an exception: "in cases of alleged irregularities in procedure before the agency, testimony thereon may be taken in the court . . .." In this case, Shearer requested a hearing on DNR's proposal to establish water levels for Lake Koshkonong on September 2, 1982. DNR issued its order setting the water levels on September 8, 1982, without considering Shearer's request. Then, on September 20, the department denied the request. As indicated, because of the restrictive holding in *Town of Two Rivers,* the department never considered whether Shearer's request met the criteria of sec. 227.42.

It seems to us that in such a case, where the record is minimal to nonexistent, the reviewing court might well utilize the "procedural irregularities" provisions of sec. 227.57(1), Stats., to take evidence only for the limited purpose of determining whether the petitioner is able to make a *prima facie* case for entitlement to a contested case hearing under sec. 227.42. If the petitioner is able to do so, the trial court would then reverse and remand to the agency with directions to grant the request. If not, the agency's denial would be affirmed.[6]

---

[6] Alternatively, the court could consider the application of other portions of sec. 227.57, Stats., which allow for remand to the agency for certain purposes. Subsection (7), for example, provides that, in cases where the agency's action "depends on facts determined without a hearing, the court shall set aside, modify or order agency action if the facts compel a particular action as a matter of law, or it may remand the case to the agency for further examination and action within the agency's responsibility." Sub-

An "irregularity" is not necessarily an impropriety. It is also an act that is "inadequate because of failure to conform to a prescribed course"—one that "fail[s] to accord with what is . . . accepted[ ] or right." Webster's Third New International Dictionary 1196 (1976). Certainly use of a procedure that fails to give adequate consideration to a claim of statutory entitlement to a hearing may be considered an "irregularity."

If, before denying a request for a hearing, the agency itself conducts brief proceedings, or considers supplemental materials or submissions by the petitioner, in order to determine whether the requirements of sec. 227.42, Stats., have been met, the reviewing court will have a record before it and may proceed on that basis.

If, as here, however, the record is no more than an exchange of correspondence or is otherwise inadequate, the court should be able to take limited evidence to see whether the petitioner can state a *prima facie* case for entitlement to the hearing; that is, whether he or she is able to offer "evidentiary facts . . . which if they remain uncontradicted . . . resolve all factual issues in the moving party's favor." *Walter Kassuba, Inc. v. Bauch*, 38 Wis. 2d 648, 655, 158 N.W.2d 387, 391 (1968).[7] We believe the circuit court has the authority under sec. 227.57(1), Stats., to hear evidence on that limited question in the review proceedings.

---

section (5) permits the court to either set aside or modify the agency action, or remand to the agency for further action, upon a finding "that the agency has erroneously interpreted a provision of law and a correct interpretation compels a particular action.

[7] The fact that *Walter Kassuba, Inc.* is a summary judgment case does not mean, as the dissent surmises, that we are in any way adopting or applying the "summary judgment methodology" in this case.

Because the record of the hearings on the motion for temporary relief in this case is more than adequate to determine whether Shearer has stated a *prima facie* case for entitlement to a hearing under sec. 227.42, Stats., and because the question is one of law which we review independently, *Muggli Dental Studio v. Taylor,* 142 Wis. 2d 696, 699, 419 N.W.2d 322, 323 (Ct. App. 1987), we believe it is appropriate to consider the issue.

One of Shearer's witnesses was a DNR employee who acknowledged that the agency's order would raise minimum water levels on Lake Koshkonong by one foot during the open water season. He had written the department's preliminary environmental impact assessment, and he indicated in that document that even minor increases in water levels contribute to shoreline erosion and the degradation of wetlands adjoining the lake.

Several scientists also testified on Shearer's behalf. A professor of agricultural engineering stated that using flashboards on the dam, as required by the DNR order, would raise the average water levels on the lake. A hydrogeologist testified that this would in turn cause ground water levels to rise, which would have adverse effects on the farms and other riparian lands owned by Shearer and his co-petitioners. Another professor, a specialist in inland lakes, testified that, in his opinion, the DNR order would raise average water levels in Lake Koshkonong between four and six inches, and that this would substantially increase shoreline erosion on adjoining lands. A third scientist testified that an increase in average water levels of only three inches would cause substantial erosion of the peat soils of the shoreline and that the resulting increase in the water table would damage backwater wetlands in the area. Finally, the Jefferson County Zoning Administrator identified several sep-

tic systems in the Lake Koshkonong area that would be adversely affected by increased lake levels, and a limnologist described the environmental importance of protecting the wetlands surrounding the lake from dangers caused by higher water levels.

We are satisfied that this evidence is more than adequate to state a *prima facie* case that the "substantial interest[s]" of Shearer and the other petitioners were threatened with injury by the DNR action, and that these injuries were different in kind and degree from any injury to the general public that might result from the order. Further, there is no suggestion in the record that the legislature did not intend that the interests asserted by the petitioners were not to be protected, and it is apparent that material facts are in dispute. In short, Shearer has established *prima facie* entitlement to a contested case hearing under sec. 227.42, Stats.[8]

We next consider Rock County's argument that it, too, is entitled to a DNR hearing. As indicated earlier, the county's petition for review of the lake level order included allegations that the department had "erred" by not granting the county a contested case hearing, and, among other relief, it requested that the matter be remanded to the department for hearing. In the review proceedings, the county joined in Shearer's request for a temporary injunction and offered evidence of the cost of remodeling the dam to comply with the DNR order,

---

[8] It is immaterial that there was also evidence at the injunction hearing that could lead to an opposite conclusion—that Shearer and the other petitioners were not threatened with injury by the DNR order. The existence of a *prima facie* case for relief does not depend on a balancing of the testimony, but only upon the facts offered in support of the request. *Walter Kassuba, Inc. v. Bauch,* 38 Wis. 2d 648, 655, 158 N.W.2d 387, 391 (1968).

which the county claimed constituted "injury" within the meaning of sec. 227.42, Stats. The trial court concluded that the expenditure of funds would not be an "injury" to the county because it would be receiving a "capital improvement" of equivalent value (the remodeled dam) in return for the money spent.[9]

The county, however, never made any request to DNR for a hearing prior to the institution of the judicial review proceedings. Indeed, its first mention of a hearing is in the petition for review. Then, some nine months after the petition was filed, counsel for the county and DNR "stipulated" that the county should be treated as having made such a request to the department, and DNR as having denied it; and, further, that the county should also be treated as having taken a timely appeal from the denial.

Section 227.42, Stats., requires any party seeking a hearing to "fil[e] a written request" with the agency, and states that "[a]ny denial of a request for a hearing shall be in writing [and] shall state the reasons for denial . . .." Under sec. 227.42(2), an unsuccessful party may petition for judicial review of the agency's written denial of the hearing request, and the statute directs that the petition be served and filed "within 30 days after the service of the decision of the agency upon [the party]." Sec. 227.53(1)(a)2.

It is well-settled that the right to seek and obtain review of agency action under ch. 227, Stats., "is dependent upon strict compliance with that chapter." *Kosmatka v. DNR,* 77 Wis. 2d 558, 568, 253 N.W.2d 887, 892

---

[9] The trial court also concluded that the fact that the county was leasing the dam to a private individual for purposes of electric power production also militated against any possible "injury" resulting from the expenditures required by the DNR order.

(1977). And "[u]nless the statutory requirements are strictly complied with, a party seeking review cannot invoke the subject matter jurisdiction of the circuit court." *Schiller v. Wisconsin ILHR Department,* 103 Wis. 2d 353, 355, 309 N.W.2d 5, 6 (Ct. App. 1981).

The jurisdiction of the circuit court over a claim of entitlement to contested case hearings under sec. 227.42, Stats., is limited to reviewing the agency's denial of a hearing request. Because Rock County never requested a hearing, and thus was never denied one, the court never obtained subject matter jurisdiction over the county's claim.

The county argues, however, that the stipulation between its attorney and DNR's lawyer cures any jurisdictional problem and permits us to consider its entitlement to a hearing under sec. 227.42, Stats. We disagree. Unlike personal jurisdiction, subject matter jurisdiction cannot be conferred upon the court by consent of the parties. *Cudahy v. Department of Revenue,* 66 Wis. 2d 253, 259–60, 224 N.W.2d 570, 573 (1974). The circuit court never acquired jurisdiction over the county's claim, and under these circumstances, we do not see how the county can now be heard to complain that the court erred when it ruled (on other grounds) that the county was not entitled to a contested case hearing. We therefore affirm that portion of the order. In so ruling, however, we express no opinion on the county's right to intervene or otherwise participate in the hearings we now direct the department to hold.[10]

---

[10] Shearer also challenged DNR's refusal to prepare an environmental impact statement for its order under sec. 1.11, Stats. He has conceded, however, that should we order a contested case hearing before the department, as we have done, this issue becomes moot.

*By the Court.*—Judgment and order affirmed in part, reversed in part and cause remanded with directions to the trial court to enter an order remanding the matter to the Department of Natural Resources and directing the department to grant Shearer's request for a hearing under sec. 227.42, Stats.

DYKMAN, J. *(dissenting).* As purportedly redrawn by the majority, sec. 227.42(1m), Stats., would provide:

> (a) Whenever a person requests a hearing pursuant to sec. 227.42(1), the agency shall:
> (1) hold brief proceedings or consider supplemental materials or submissions from the person requesting a hearing, and thereafter determine whether the requirements of sec. 227.42, Stats., have been met; or
> (2) determine from correspondence or otherwise inadequate material whether the requirements of sec. 227.42 have been met.
> (b) If the agency has proceeded under sec. 227.42(1m)(a)(1), judicial review shall be pursuant to sec. 227.52, Stats.
> (c) If the agency has proceeded under sec. 227.42(1m)(a)(2), judicial review shall be pursuant to sec. 227.57(1), Stats.

Of course, the legislature has not yet enacted sec. 227.42(1m), Stats. Nor need it do so because the majority opinion makes legislative action unnecessary. I dissent because I conclude that substantive changes to ch. 227 are better made by the legislature.

I agree with the majority that the legislature has not provided an answer to the question: "Who determines whether the requirements of sec. 227.42, Stats., are met and how is that determination made?" I disagree that we

171

should provide that answer by injecting summary judgment methodology into judicial reviews of administrative decisions.[1] We have previously followed supreme court precedent holding that summary judgment procedure is inapplicable to administrative reviews under ch. 227. *Chicago & N.W.R.R. v. Labor & Ind. Rev. Comm.,* 91 Wis. 2d 462, 475–76, 283 N.W.2d 603, 610 (Ct. App. 1979), *aff'd,* 98 Wis. 2d 592, 297 N.W.2d 819 (1980). We should continue to do so. *State v. Lossman,* 118 Wis. 2d 526, 533, 348 N.W.2d 159, 163 (1984).

I am particularly concerned that the procedure enacted by the majority substantially departs from the general concept that there is only limited judicial review of administrative agency determinations. Whether a person is entitled to a contested case hearing should be a question answered by an agency and reviewed by the judiciary. The majority has substituted a circuit court trial for a review of agency action. It does so because it concludes the agency action in this case is unreviewable. I agree that review is difficult, but I do not agree that the solution is the circuit court mini-trial the majority has decreed.

When a circuit court makes inadequate findings of fact, making its decision unreviewable, we may still

---

[1] The majority's "prima facie case for entitlement," a concept taken from the procedure required by *Walter Kassuba, Inc. v. Bauch,* 38 Wis. 2d 648, 655, 158 N.W.2d 387, 391 (1968) is in reality nothing other than standard summary judgment methodology. The majority does not explain why it chose that procedure rather than other procedures, such as that employed in criminal preliminary hearings, sec. 970.03, Stats. That procedure, involving an evidentiary hearing rather than an affidavit review, would seem to be a better way to find facts. This reinforces my belief that the legislature ought to decide issues such as the one addressed in these opinions.

affirm if the judgment finds support in the evidence, or we may remand for further findings. *Perrenoud v. Perrenoud,* 82 Wis. 2d 36, 42–43, 260 N.W.2d 658, 661 (1978). We use a similar procedure where a circuit court abuses its discretion by failing to consider proper factors. *Schmid v. Olsen,* 111 Wis. 2d 228, 237, 330 N.W.2d 547, 552 (1983). I see no reason to be less deferential to an agency determination, given the policy of limited judicial review found in ch. 227, Stats.

Ironically, the majority criticizes the circuit court for conducting the very sort of hearing the majority now requires where an agency's conclusion is difficult to review. "[T]he cart overtook the horse and the [circuit] court assumed the agency's functions." Majority opinion at 162. That is not what occurred. The circuit court considered *The Scope of Judicial Review of Administrative Agency Decisions in Wisconsin,* 1973 Wis. L. Rev. 554, and the deferential scope of review of an agency's conclusions of law found in *Dept. of Revenue v. Milwaukee Refining Corp.,* 80 Wis. 2d 44, 48, 257 N.W.2d 855, 857 (1977). The circuit court's opinion reflects that it recognized its limited role in reviewing an agency decision. It wrote: "Does the record support the findings of the DNR? It does," and "I am satisfied the DNR findings are rooted in reason," and

> [t]hat the ability of the dam to control during high water episodes is minimal is regrettable, but the DNR is not required to come up with the perfect solution for all time to this or any other problem it is empowered to address. DNR must consider all those statutory and procedural matters required to reach a decision, and this court then will affirm its decision. The DNR has done what it is required to do, and this court must affirm.

These are not words used by a trial court reviewing a matter de novo, but the language of deferential review. The majority has confused the length and complexity of the circuit court hearing with its purpose: "The trial court's decision that Shearer was not entitled to a DNR hearing on the merits of the agency's proposal was based on the court's analysis of volumes of testimony and exhibits from its earlier hearings on Shearer's request for a temporary injunction. And that is the problem." Majority opinion at 162. That was not the trial court's decision. What the trial court did decide was that DNR's conclusion was supported by the record, and therefore should be affirmed.

DNR's findings and conclusions take no more than three typewritten pages. That does not imply that a hearing to test the data and assumptions underlying those facts and conclusions would be cursory. Given the 138-year history of the Indianford Dam, and the various conflicting interests affected by the water level of Lake Koshkonong, I am not surprised that the trial court needed seven days of hearings to determine whether the DNR had improperly denied appellants a contested case hearing on its proposed order. I agree with the trial court's conclusion that sec. 227.42, Stats., did not require the DNR to hold a contested case hearing.

The majority does not address the other issues raised by appellants because the issue it addresses determines the case. *Sweet v. Berge,* 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983). There is therefore no reason to address those other issues in this dissent, and I do not do so.