METROPOLITAN GREYHOUND MANAGEMENT CORPORATION, Petitioner-Joint Appellant,

v.

WISCONSIN RACING BOARD, Respondent, [Case No. 89-2154.]†

METROPOLITAN RACING ASSOCIATION, INC., Petitioner-Joint Appellant,

v.

WISCONSIN RACING BOARD, Respondent. [Case No. 90-0454.]†

Court of Appeals

*Nos. 89-2154, 90-0454. Submitted on briefs July 3, 1990.—Decided August 14, 1990.*

(Also reported in 460 N.W.2d 802.)

† Petition to review denied.

On behalf of the petitioner-joint-appellant, the cause was submitted on the briefs of *Peter A. Peshek* and *Paul G. Kent* of *DeWitt, Porter, Huggett, Schumacher & Morgan, S.C.* of Madison, and *Stephen L. Morgan* of *Murphy & Desmond, S.C.* of Madison.

On behalf of the respondent, the cause was submitted on the briefs of *Donald J. Hanaway,* attorney general, and *Warren D. Weinstein,* assistant attorney general.

Before Moser, P.J., Sullivan and Fine, JJ.

FINE, J.   These consolidated appeals present two significant issues of first impression. First, whether, and under what circumstances, an applicant for a racetrack license in Wisconsin has the right to a contested-case hearing under the procedures established by secs. 227.44 through 227.50, Stats. Second, whether a trial court has authority to reconsider its decision in a review proceeding under Chapter 227 pending an appeal from that decision. We conclude that the appellants were entitled to a contested-case hearing, and that the trial court had authority to reconsider its decision. Accordingly, we reverse.

# I.

Metropolitan Racing Association applied for a license to own and operate a dog racing facility in Menomonee Falls, Wisconsin, pursuant to sec. 562.05(1)(a), Stats. (1987–88), and Metropolitan Greyhound Management Corporation applied for a license to manage that facility, pursuant to sec. 562.05(1)(b), Stats. (1987–88).[1] The applications were denied by the Racing Board on June 3, 1989.[2]

On April 25, 1989, the Wisconsin Racing Board, which is charged with the regulation of "racing and on-track pari-mutuel betting in this state," secs. 15.81, 562.01(2), and 562.02, Stats. (1987–88), held a public hearing on the applications, pursuant to sec. 562.05(lm), Stats.[3] Representatives of Metropolitan Racing and Metropolitan Greyhound Management spoke at the public hearing, which was attended by three of the Racing

---

[1]Section 562.05(1)(a) & (b), Stats. (1987–88), provided:

Licenses. (1)   No person may engage in any of the following activities without a valid annual license issued by the board:
    (a)   The ownership and operation of a racetrack at which pari-mutuel betting is conducted.
    (b)   The sponsorship and management of any race on which pari-mutuel betting is conducted and which is not located at a fair.

Effective August 9, 1989, the word "betting" was changed to "wagering" by 1989 Wis. Act 31 secs. 2704d and 2704e. 1989 Wis. Act 31 sec. 3203.

[2]The June 3 decision was reissued by the Racing Board in substantially the same form on June 5, 1989.

[3]Effective August 9, 1989, the word "betting" in sec. 562.02(1)(a), Stats., was changed to "wagering" by 1989 Wis. Act 31 sec. 2700r. 1989 Wis. Act 31 sec. 3203.

Section 562.05(lm), Stats., provides that the Racing Board "may not issue a license under sub. (1)(a) to (c) except after a public hearing."

Board's five members as well as by members of the public. As characterized at the hearing by Racing Board secretary and member C. David Bugher, the hearing was "held in order to allow public comment" on the proposed facility. All the parties to this appeal agree that the public hearing was not a contested-case hearing under secs. 227.44 through 227.50, Stats. Since the Racing Board's refusal to grant a contested-case hearing concerns the discussion at the public hearing that related to the ownership of Metropolitan Racing and Metropolitan Greyhound Management, review of that discussion is necessary to understand the contested-case-hearing dispute.

The first speaker at the public hearing in support of the applications was Don Carmichael, vice-chairman of Delaware North Companies, which Carmichael described as "the nation's largest owner-operator of pari-mutuel sports with 12 facilities across the country." According to Carmichael, the proposed Menomonee Falls facility would be owned by Metropolitan Racing, and managed by Metropolitan Greyhound Management. Steve Manion, assistant general counsel for Delaware North Companies and a director of Metropolitan Racing, explained that Metropolitan Racing was owned by Milwaukee Sportservice, a Delaware North subsidiary, and that Metropolitan Greyhound Management was owned by Thomas Shehan and his wife. Thomas Shehan told those attending the public hearing that "I have my own firm which would manage the Menomonee Falls facility under contract to Delaware North, the owner and operator of the proposed facility." Noting that he would report to the proposed facility's board of directors, he added that "[t]here will be a close working relationship between my company and Delaware North." Later, in response to questions posed by Kurt N. Schacht, the

682

Racing Board's chief counsel, Shehan indicated that he was "not sure" who the directors of his corporation were, but contended that he was in charge as "the president and the owner." The following colloquy between Schacht and Shehan revealed some uncertainty as to the actual chain of command:

> MR. SCHACHT: What I am trying to establish is, to who does—to whom does Mr. Shehan report to as an officer of the company?
> MR. SHEHAN: In my testimony I testified that I would report to the directorship.
> MR. SCHACHT: And the directors at this point are the two members of the Delaware North Company?
> MR. SHEHAN: Right.
> MR. PHILLIPS:[4] No. Let's get that clarified. I believe Mr. Shehan testified that he is the owner of the management corporation and the president of that, and he will be responsive to the directors of the Racing Association, the owner of the property. The Delaware North or Mr. Michels or Mr. Manion will not have any directorships in the management corporation that Mr. Shehan owns 100 percent of.[5]
> MR. SCHACHT: The—currently the directors of the corporation as disclosed to us.
> MR. PHILLIPS: If that's the case, that will be corrected. They will not be directors of the corporation.[6]

---

[4]Stanley Phillips was introduced by Carmichael at the public hearing as the "executive vice-president of Delaware North Companies and our senior executive in our parimutuel group."

[5]Carmichael introduced Frank Michels at the public hearing as "president of Sportsystems Corporation and senior operating officer for parimutuels in Delaware North." As already noted, Steve Manion was Delaware North's assistant general counsel.

[6]Although Manion and Michels were listed in the articles of

683

Phillips explained that Delaware North was the guarantor of the bank loans that would underwrite the operation's overall financing. When racing board chief counsel Schacht noted that in his view this indicated that Delaware North not only had "apparent management control" over Metropolitan Racing and Metropolitan Greyhound Management but had "financial control" over them as well, Peter Peshek, counsel for Metropolitan Racing, responded that he did not think Schacht's conclusion was "a fair characterization of the record."

Schacht's concern over the relationships between Delaware North, Metropolitan Racing, and Metropolitan Greyhound Management was reflected in the Racing Board's decision to deny the applications. The Racing Board gave five reasons for the denial:

> —The Racing Board determined that there was insufficient disclosure concerning the directors and officers of Metropolitan Greyhound Management Corporation, and that this violated Wis. Adm. Code sec. Race 5.04(2).
> —The Racing Board determined that "Thomas Shehan would hold both the offices of President and Secretary of Metropolitan Greyhound Management, in violation of both Wisconsin Statute and the by-laws of Metropolitan Greyhound Management Corporation," and that this violated certain provisions of the Wisconsin Administrative Code. Additionally, the Racing Board found "that the disclosures by the applicants relating to the identities of the directors of

incorporation of Metropolitan Greyhound Management Corporation as its directors, Manion noted at the public hearing that they had resigned "prior to the time of the filing of the actual application" for the management license, and that on the license application itself "we list Thomas Shehan as the sole director and shareholder at this point."

Metropolitan Greyhound Management Corporation were inadequate to properly assess corporate organization and control."

—The Racing Board found that there were "discrepancies and vacillations in the information submitted by the applicants to the Board relating to the identity of the officers and directors of the company and . . . inconsistencies in the oral testimony of the applicants relating to such matters," and that this violated Wis. Adm. Code sec. Race 5.20.

—The Racing Board determined that Delaware North Corporation was the "ultimate parent corporation" of Metropolitan Racing and Sportsystems Corporation, and that Delaware North Corporation also controlled Metropolitan Greyhound Management, so that Metropolitan Racing, Metropolitan Greyhound Management, and Sportsystems Corporation were "all the same person" for the purposes of sec. 562.05(3), Stats., which prohibits any person from holding "more than one license issued under [sec. 562.05](1)(a) and one license issued under [sec. 562.05](1)(b) or (c)." The Racing Board concluded that Metropolitan Greyhound Management was "thereby disqualified from holding a [management] license" under sec. 562.05(1)(b).

—The Racing Board concluded that the disqualification of Metropolitan Greyhound Management from holding a management license under sec. 562.05(1)(b) disqualified Metropolitan Racing Association from holding a license to own and operate a racing facility under sec. 562.05(1)(a) because of its "failure to have a management and sponsorship agreement with a person who is licensed or is an applicant for a license under s. 562.05(1)(b), Stats."

On June 22, 1989, Metropolitan Racing and Metropolitan Greyhound Management requested a contested-

case hearing pursuant to sec. 227.42(1), Stats. This provision entitles a person to a contested-case hearing if:

(a) A substantial interest of the person is injured in fact or threatened with injury by agency action or inaction;

(b) There is no evidence of legislative intent that the interest is not to be protected;

(c) The injury to the person requesting a hearing is different in kind or degree from injury to the general public caused by the agency action or inaction; and

(d) There is a dispute of material fact.

In support of the requests, five alleged disputes of material fact were asserted:

A. Whether Metropolitan Greyhound Management Corporation (MGMC) provided all necessary information and documents in a timely and/or adequate fashion with respect to the corporate officers, directors and organization of MGMC. For example, the decision alleges the directors of the MGMC are not properly disclosed whereas Mr. Shehan properly identified himself throughout as the sole director.

B. Whether MGMC was in material compliance with all statutes, charters, ordinances or regulations with respect to corporate officers and the disclosure of the identifies [sic] of directors of MGMC.

C. Whether MGMC omitted information or deviated from its application with respect to corporate structure, as alleged by the Racing Board.

D. Whether Metropolitan Racing, Sportsystems Corporation and MGMC are the "same person" within the meaning of Wis. Stat. [sec.] 562.05(1)(a) and (b).

E. Whether the Findings of Fact in the opinion are inconsistent with the Findings of Fact made in other applications decided by the Racing Board on

686

June 3 and June 5, 1989. See, Wis. Stat. [sec.] 227.57(8).

Although the Racing Board conceded that Metropolitan Racing and Metropolitan Greyhound Management satisfied subsections (a) through (c), it denied the requests on July 12, 1989, because it did not believe there were disputes of material fact as required by subsection (d). The Racing Board explained its rationale as follows:

> A review of [Metropolitan Greyhound Management]'s petition reveals only one allegation of a dispute of a material fact, that being your assertion that Mr. Shehan properly identified himself throughout (the process) as the sole director. As indicated in the record, Mr. Shehan was unclear as to what his role in the applicant was, and that in any event, he was disclosed as the sole officer of the corporation, in violation of the applicant's by-laws and Wisconsin Statute. Accordingly, the Board found that [Metropolitan Greyhound Management] had not adequately disclosed the identification of the officers and directors of the corporation. (page 99 Board's licensing decision). Therefore, it appears that there is no dispute of material fact, rather you inappropriately argue that the Board's decision is not supported by the record of review.

Following the Racing Board's denial of the requests for a contested-case hearing, Metropolitan Racing and Metropolitan Greyhound Management sought judicial review as authorized by sec. 227.52, Stats. The trial court affirmed, and concluded that the alleged disputes of material fact were legal issues that had to be decided "in a proceeding for judicial review of the decision" and not explored in a contested-case hearing. The trial court also concluded that sec. 227.51, Stats., did not give Met-

687

ropolitan Racing and Metropolitan Greyhound Management an independent right to a contested-case hearing.

Metropolitan Racing and Metropolitan Greyhound Management appealed from the trial court's order, and, subsequently, filed a motion under Rule 806.07, Stats., asking the trial court to reconsider. The trial court, relying on *Charter Manufacturing Company v. Milwaukee River Restoration Council, Inc.,* 102 Wis. 2d 521, 307 N.W.2d 322 (Ct. App. 1981), concluded it lacked authority to do so.

II.

A.   The Right to a Contested-Case Hearing

Whether someone is entitled to a contested-case hearing is a question of law that we determine independently of the trial court's decision. *See Milwaukee Metro. Sewerage Dist. v. DNR,* 126 Wis. 2d 63, 71, 375 N.W.2d 648, 651 (1985); *Shearer v. DNR,* 151 Wis. 2d 153, 158, 443 N.W.2d 669, 672 (Ct. App. 1989). Although we are also " 'not bound by an agency's conclusions of law,' " *Drivers, Salesmen, Warehousemen, Milk Processors, Cannery, Dairy Employees & Helpers Local No. 695 v. LIRC,* 154 Wis. 2d 75, 82, 452 N.W.2d 368, 371 (1990) (quoting *West Bend Educ. Ass'n v. WERC,* 121 Wis. 2d 1, 11, 357 N.W.2d 534, 539 [1984]), we will give "great weight" to an agency's rational interpretation of a statute the agency is charged with administering as long as the agency has "some special expertise not acquired by courts" and the " 'administrative practice is long continued, substantially uniform and without challenge by governmental authority and courts,' " *id.,* 154 Wis. 2d at 83, 452 N.W.2d at 371-372 (quoting *Wood County v. Board of Vocational, Technical and Adult Educ.,* 60

688

Wis. 2d 606, 618, 211 N.W.2d 617, 623 [1973]). Since the Racing Board is not charged with administering Chapter 227, although it is subject to its provisions, and since it does not have any special expertise or any long-continued practice in applying the contested-case provisions of Chapter 227, we decide *de novo* whether Metropolitan Racing and Metropolitan Greyhound Management are entitled to a contested-case hearing. *See Drivers,* 154 Wis. 2d at 83–84, 452 N.W.2d at 371–372.

1. The right to a contested-case hearing under sec. 227.42(1), Stats.

As noted, Metropolitan Racing and Metropolitan Greyhound Management sought a contested-case hearing under sec. 227.42(1), Stats. The Racing Board denied that request on the ground that subsection (d) of sec. 227.42(1) requires that there be "a dispute of material fact," and, in the Racing Board's view, there was none. Metropolitan Racing and Metropolitan Greyhound Management contend, however, that the basic dispute of material fact—what they describe in their brief before this court as "the factual underpinning of the entire decision of the Racing Board"—is whether, as found by the Racing Board, "Metropolitan Racing Association, Inc., Sportsystems Corporation and Metropolitan Greyhound Management Corporation are all the same person." The Racing Board's rejoinder is that whether they are all "the same person" is not in "dispute" because the Racing Board has already found that the entities are "the same person," and, in any event, that determination is a conclusion of law outside the scope of sec. 227.42(1)(d). We disagree.

It is a fundamental principle of our jurisprudence that a person affected by governmental action has a right

to be heard in some meaningful way. *See Mathews v. Eldridge,* 424 U.S. 319, 333–335 (1976); *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950). By enacting sec. 227.42(1), Stats., the legislature has recognized the importance of ensuring certain minimum procedural safeguards for those whose "substantial interest . . . is injured in fact or threatened with injury by agency action or inaction," sec. 227.42(1)(a), where the injury or threatened injury "is different in kind or degree from injury to the general public," sec. 227.42(1)(c). These procedural safeguards are set out in secs. 227.44 through 227.50, Stats., which establish the standards for the contested-case hearing. Indeed, effective March 31, 1990, these safeguards were expanded when sec. 227.45(6m), Stats., was created by 1989 Wis. Act 139 sec. 7. This provision permits parties in contested-case hearings to subpoena witnesses and compel the production of evidence. Although the standards imposed by secs. 227.44 through 227.50 are undoubtedly inconvenient to some administrative agencies, they represent the legislature's attempt to do "justice," which, as Learned Hand once characterized it, is "the tolerable accommodation of the conflicting interests of society." Hamburger, *The Great Judge,* Life, 117, 122–125 (November 4, 1946). The procedural safeguards that the legislature has required for contested cases provide a sturdy framework for a decision that is ultimately subject to judicial review, and, importantly, they enhance the record to which that review is generally confined. *See* secs. 227.44–.48, 227.52–.53, 227.55–.58, Stats.

Significantly, and obviously, unlike the "sentence first—verdict afterwards" procedure employed by the Queen of Hearts, *see* L. Carroll, *Alice's Adventures in Wonderland,* ch. 12 (1865), the decision in a contested

case is rendered "after" the hearing. Sec. 227.47, Stats. By the same token, an agency may not deny a request for a contested-case hearing because the agency believes the person seeking the hearing is unlikely to prevail at the hearing. *See Shearer,* 151 Wis. 2d at 162, 443 N.W.2d at 673.

*Shearer* concerned an order issued by the Department of Natural Resources that established seasonal water levels for Lake Koshkonong, a man-made lake created in 1851. *Shearer,* 151 Wis. 2d at 156, 443 N.W.2d at 671. Before the order was issued, Shearer and others owning land abutting the lake had requested a contested-case hearing based on, among other authority, sec. 227.42, Stats. *Id.,* 151 Wis. 2d at 156–157, 443 N.W.2d at 671. The Department responded to the request after the order was issued, and refused to give the landowners a contested-case hearing. *Id.,* 151 Wis. 2d at 157, 443 N.W.2d at 671. They sought judicial review of the denial. *Ibid.* Rock County, which had been directed by the Department of Natural Resources order to operate its dam at the foot of the lake so as to maintain the specified water levels, *id.,* 151 Wis. 2d at 155, 443 N.W.2d at 670, joined in the landowners' request for a contested-case hearing and, additionally, sought judicial review of the order, *id.,* 151 Wis. 2d at 157, 443 N.W.2d at 671. Both the landowners and Rock County requested a temporary injunction staying implementation of the order. *Ibid.*

After a seven-day evidentiary hearing, the trial court concluded that the landowners and Rock County had shown little likelihood of success on the merits and, accordingly, denied the request for temporary injunctive relief. *Shearer,* 151 Wis. 2d at 158, 443 N.W.2d at 671. Subsequently, the trial court dismissed the petitions for review, and held that Shearer and the other landowners

were not entitled to a contested-case hearing because,as characterized by the trial court, "he had not established that his or his co-petitioners' substantial interests would be harmed or threatened with harm as a result of the DNR order." *Id.,* 151 Wis. 2d at 161, 443 N.W.2d at 673.

This court reversed. We noted that Shearer had made a *prima facie* showing that the landowners' substantial interests "were threatened with injury by the DNR action, and that these injuries were different in kind and degree from any injury to the general public that might result from the order." *Shearer,* 151 Wis. 2d at 168, 443 N.W.2d at 676. Although we observed that where the record is inadequate the trial court "should be able to take limited evidence to see whether" the person seeking a contested-case hearing "is able to offer 'evidentiary facts' " to make the *prima facie* showing, *id.,* 151 Wis. 2d at 166, 443 N.W.2d at 675 (quoting *Walter Kassuba, Inc. v. Bauch,* 38 Wis. 2d 648, 655, 158 N.W.2d 387, 391 [1968]), we specifically disclaimed any intent to adopt or apply summary judgment methodology, *Shearer,* 151 Wis. 2d at 166 n.7, 443 N.W.2d at 675 n.7. We also pointed out that holding full, contested hearings, either before the administrative agency or a reviewing court, to determine whether there is a right to a contested-case hearing made "little sense." *Id.,* 151 Wis. 2d at 164, 443 N.W.2d at 674. Rather, we held that a reviewing court should examine the record before the agency to determine whether a *prima facie* entitlement to a contested-case hearing has been made. *See id.,* 151 Wis. 2d at 165, 443 N.W.2d at 674-675.[7] We are satisfied

---

[7] "[W]here the record is minimal to nonexistent," we explained, "the reviewing court might well utilize the 'procedural irregularities' provisions of sec. 227.57(1), Stats., to take evidence only for the limited purposes of determining whether the petitioner is able to make a *prima facie* case for entitlement to a

on the record here that Metropolitan Racing and Metropolitan Greyhound Management have satisfied this minimal burden.

As we have seen, the Racing Board's denial of the license applications submitted by Metropolitan Racing and Metropolitan Greyhound Management essentially focused on what the Board found to be the ambiguities surrounding Shehan's role and the alleged interlocking nature of Metropolitan Racing, Sportsystems, and Metropolitan Greyhound Management. While, of course, the ultimate determination that these entities are "the same person" for the purposes of sec. 562.05(3), Stats., is a legal conclusion, it is a conclusion dependent on predicate facts. *See Nottelson v. DILHR,* 94 Wis. 2d 106, 115–116, 287 N.W.2d 763, 768 (1980). Metropolitan Racing Association and Metropolitan Greyhound Management contend that the statements made at the public hearing and the other material apparently considered by the Racing Board in denying the licenses were not complete and thus did not accurately reflect the true facts. They are entitled to a contested-case hearing pursuant to sec. 227.42(1), Stats., in an attempt to prove that contention, as well as to create an appropriate record for judicial review. *See Milwaukee Metro. Sewerage Dist.,* 126 Wis. 2d at 73–74, 75, 375 N.W.2d at 652–653.

### 2. Under sec. 227.51, Stats.

Although we conclude that Metropolitan Racing and Metropolitan Greyhound Management have a right to a contested-case hearing pursuant to sec. 227.42(1), Stats., we address their further contention that they also

contested case hearing under sec. 227.42." *Shearer,* 151 Wis. 2d at 165, 443 N.W.2d at 674–675.

have a right to a contested-case hearing pursuant to sec. 227.51, Stats., because that issue has been briefed by the parties and our analysis will, in the long run, contribute to judicial economy by avoiding future appeals on the issue. *Cf. State ex rel. Jackson v. Coffey,* 18 Wis. 2d 529, 533, 118 N.W.2d 939, 942 (1963) (issues that have been briefed may be considered if they are likely to recur on remand even though other issues are dispositive of appeal).

Section 227.51(1), Stats., provides:

> When the grant, denial or renewal of a license is required to be preceded by notice and opportunity for hearing, the provisions of this chapter concerning contested cases apply.

This statute is clear and unambiguous and, therefore, must be applied as written. *See Ball v. District No. 4, Area Bd.,* 117 Wis. 2d 529, 538, 345 N.W.2d 389, 394 (1984). It establishes two preconditions to the right to a contested-case hearing:

> —the agency action must concern "the grant, denial or renewal of a license"; and
> —the agency action concerning the license must "be preceded by notice and opportunity for hearing."

*See Hansen Storage Co. v. Wisconsin Transp. Comm'n,* 96 Wis. 2d 249, 253–254 n.2, 291 N.W.2d 534, 536 n.2 (1980). Both conditions are satisfied here. First, Metropolitan Racing and Metropolitan Greyhound Management have applied for licenses under sec. 562.05(1)(a) & (b), Stats., respectively. Second, sec. 562.02(1)(am), Stats., provides that the Racing Board "may not issue any license under s. 562.05(1)(a) to (c) without a hearing." Section 562.02(1)(am) grants Metro-

politan Racing and Metropolitan Greyhound Management a right to a hearing; sec. 227.51, Stats., makes applicable to that hearing the procedures concerning contested cases set out in secs. 227.44 through 227.50, Stats. Accordingly, the Racing Board is obligated by statute to provide to Metropolitan Racing and Metropolitan Greyhound Management a contested-case hearing.

## B. The Trial Court's Authority to Reconsider

1. As a general rule, courts should not address an issue that will have no effect on the dispute under consideration. *See Gross v. Hoffman,* 227 Wis. 296, 300, 277 N.W. 663, 665 (1938). We may, nevertheless, consider a question when either it "presents an issue of great public importance or where the situation involved will arise with sufficient frequency to warrant a definite decision to guide trial courts in similar instances." *State ex rel. McDonald v. Douglas County Circuit Court,* 100 Wis. 2d 569, 572-573, 302 N.W.2d 462, 463 (1981). Since whether a trial court has authority to reconsider its decision in a Chapter 227 review proceeding after that decision has been appealed presents a significant issue of judicial administration that is unlikely to be otherwise considered by an appellate court, and since the issue has been briefed by the parties, we will address it even though our decision that Metropolitan Greyhound Management and Metropolitan Racing are entitled to a contested-case hearing makes moot the trial court's order denying the motion to reconsider. *Cf. Coffey,* 18 Wis. 2d at 533, 118 N.W.2d at 942.

2. As noted, Metropolitan Greyhound Management and Metropolitan Racing filed their notice of appeal from the trial court's order affirming the Racing Board's refusal to grant them a contested-case hearing,

and, subsequently, sought reconsideration from the trial court pursuant to Rule 806.07, Stats. Despite the clear language of sec. 808.07(2)(am) and Rule 808.075(1), Stats., which permits trial courts to grant relief under Rule 806.07 pending appeal, the trial court concluded that this court's decision in *Charter Manufacturing Company v. Milwaukee River Restoration Council, Inc.*, 102 Wis. 2d 521, 307 N.W.2d 322 (Ct. App. 1981), prevented it from doing so. We disagree.

■ Trial courts in Wisconsin may consider motions brought under Rule 806.07, Stats., that seek relief from a judgment or order even though an appeal from that judgment or order is pending. Section 808.07(2), Stats., provides:

> Authority of a court to grant relief pending appeal.
> . . ..
> (am)   During the pendency of an appeal, the trial court may hear and determine a motion filed under s. 806.07.

Rule 808.075(1), Stats., similarly permits the trial court to "act under" Rule 806.07 "[i]n any case, whether or not an appeal is pending." *Charter* does not make these provisions inapplicable merely because the order appealed from and for which reconsideration is sought was entered in a Chapter 227 review proceeding.

In *Charter,* the Department of Natural Resources had approved a plan submitted by the Village of Saukville to extend water and sewer service to an industrial plant owned by Charter Manufacturing Company. *Charter,* 102 Wis. 2d at 523, 307 N.W.2d at 323. The Milwaukee River Restoration Council objected and commenced a proceeding against the Department seeking

judicial review under Chapter 227 of that approval. *Ibid.* Saukville was a party to that proceeding; Charter was not. *Ibid.* Ultimately, the Chapter 227 review proceeding was settled, and a judgment was entered that conditioned the extension of water and sewer service to Charter on the Saukville sewage treatment plant meeting certain standards. *Ibid.*

Approximately a year after the judgment was entered, Charter filed a declaratory-judgment action under sec. 806.04, Stats., seeking to have the judgment vacated because the Saukville treatment facility would not be able to meet the required standards, and that this prevented the company from obtaining water and sewer service. *Id.,* 102 Wis. 2d at 523–524, 307 N.W.2d at 323. The trial court determined that since the stipulation upon which the judgment had been entered assumed that the Saukville facility would be able to meet the standards, it was no longer equitable to enforce the judgment, and ordered it vacated pursuant to Rule 806.07(1)(g) & (h), Stats.[8] *Id.* at 524, 307 N.W.2d at 323. We reversed, concluding that since Chapter 227 " 'provides a comprehensive, fully defined, procedure for judicial review,' " someone who was not a party to either the administrative proceedings or judicial review of those proceedings could not later collaterally attack the resulting judgment. *Id.,* 102 Wis. 2d at 525–526, 307 N.W.2d at 324 (quoting *Wisconsin Envtl. Decade v. Public Serv. Comm'n,* 79 Wis. 2d 161, 170, 255 N.W.2d 917, 923 [1977]). Rather, as the supreme court has noted, judicial review of "decisions and orders of administrative agen-

---

[8]Rule 806.07(1), Stats., permits a court to "relieve a party . . . from a judgment, order or stipulation" if "(g) [i]t is no longer equitable that the judgment should have prospective application; or (h) [there are] [a]ny other reasons justifying relief from the operation of the judgment."

cies" must be had "as set forth in ch. 227." *Chicago & N. W. R.R. v. LIRC,* 98 Wis. 2d 592, 613, 297 N.W.2d 819, 828 (1980).

■This case is significantly different from *Charter.* First, judicial review of the Racing Board's refusal to grant Metropolitan Racing and Metropolitan Greyhound Management a contested-case hearing is being had as set forth in Chapter 227. A petition for judicial review was filed pursuant to sec. 227.53, Stats., and the trial court's order was entered pursuant to sec. 227.57, Stats. The appeal is before this court pursuant to sec. 227.58, Stats. Second, Metropolitan Greyhound Management and Metropolitan Racing were (unlike Charter) parties to the administrative determination about which they complain. They were also (unlike Charter) parties to the Chapter 227 review proceeding that resulted in the court order about which they complain. Most significantly, their motion for reconsideration under Rule 806.07, Stats., pending appeal was not, as in *Charter,* a collateral attack on a judgment by a non-party. Rather, the motion was made in the ordinary course of the process for judicial review provided for by Chapter 227. It is no more alien to that process than are any of the other civil-procedure provisions that govern cases pending before the trial and appellate courts, and which do not conflict with Chapter 227.

Motions for reconsideration pending appeal serve an important function. First, a trial court's reconsideration may obviate the necessity for an appeal. If so, the parties are not only spared unnecessary expense, but the interests of judicial economy are served as well. Second, even if an appeal is not avoided, a motion for reconsideration that challenges the trial court's decision can hone its analysis, and thus assist appellate review. There is

nothing in the law or in logic that persuades us of an intent to exclude judicial review of administrative agency determinations from these benefits. Indeed, as we have already seen, Rule 808.075, Stats., permits a trial court to grant Rule 806.07 relief pending appeal in "*any* case." (Emphasis supplied.) The trial court had clear authority to reconsider its order affirming the Racing Board's determination not to grant a contested-case hearing pending the appeal from that order.

## III.

The trial court's order affirming the Racing Board's refusal to grant Metropolitan Racing and Metropolitan Greyhound Management a contested-case hearing is reversed and the cause is remanded for proceedings consistent with this opinion.

*By the Court.*—Orders reversed and cause remanded.