(90 CV 1352) MADISON LANDFILLS, INC., Petitioner-Respondent-Cross-Appellant,

v.

State of Wisconsin DEPARTMENT OF NATURAL RESOURCES, Respondent-Cross-Appellant.

(90 CV 1379) COUNTY OF DANE, a municipal corporation, Petitioner-Appellant-Cross-Respondent,

v.

State of Wisconsin DEPARTMENT OF NATURAL RESOURCES, Respondent-Respondent.

(90 CV 1399) TOWN OF DUNN, a Wisconsin municipality, and Wisconsin Alumni Research Foundation, a Wisconsin corporation, Petitioners-Appellants-Cross-Respondents,

v.

State of Wisconsin DEPARTMENT OF NATURAL RESOURCES, Respondent-Respondent.

Court of Appeals

*No. 92–0326. Oral argument March 11, 1993.—Decided October 28, 1993.*

(Also reported in 509 N.W.2d 300.)

130

For the petitioner-appellant-cross-respondent Dane County, the cause was submitted on the brief of *Cal W. Kornstedt*, corporation counsel, with *Jerre L.*

*Ziebelman*, assistant corporation counsel. Orally argued by *Jerre L. Ziebelman*.

For the petitioners-appellants-cross-respondents Town of Dunn and Wisconsin Alumni Research Foundation, the cause was submitted on the brief of *Kim Grimmer, David B. Billing* and *Don M. Millis* of *Ross & Stevens, S.C.* of Madison. Orally argued by *Kim Grimmer*.

For the respondent-respondent Department of Natural Resources, the cause was submitted on the brief of *James E. Doyle*, attorney general, with *Steven B. Wickland*, assistant attorney general. Orally argued by *Steven B. Wickland*.

For the petitioner-respondent-cross-appellant Madison Landfills, Inc., the cause was submitted on the brief of *Michael P. Dunn* of *Davis & Kuelathu, S.C.* of Milwaukee. Orally argued by *Michael P. Dunn*.

Before Eich, C.J., Gartzke, P.J., and Dykman, J.

GARTZKE, P.J. The Town of Dunn, Wisconsin Alumni Research Foundation (WARF) and Dane County appeal from a circuit court order dismissing their petitions for ch. 227, Stats., review of a Department of Natural Resources (DNR) decision disapproving a feasibility report submitted by Madison Landfills, Inc. (MLI) regarding the so-called Libby landfill. Dunn, WARF and Dane County also appeal from an order denying their motions to reconsider the dismissal order. Because Dunn, WARF and Dane County are not aggrieved by DNR's decision, we affirm both orders as to those parties.

MLI cross-appeals from orders dismissing its petition for ch. 227, Stats., review of DNR's decision and denying its motion to reconsider the dismissal. The

circuit court found that MLI filed its petition prematurely. We disagree and reverse both orders as to MLI.

## I. BACKGROUND

MLI proposes to construct and operate a landfill at the Libby site in the Town of Blooming Grove.[1] No person may operate a landfill without an operating license from DNR. Section 144.44(4)(a), Stats. One early stage of the licensing process requires the applicant to submit a "feasibility report" to DNR. Section 144.44(2), Stats. MLI filed a feasibility report for its Libby landfill proposal. The issues in this case turn on the nature of DNR's determination vis-a-vis the various parties regarding that report.

Both Dunn and WARF own property adjacent to the proposed site. They requested and were granted a contested case hearing on MLI's feasibility report under sec. 144.44(2)(m), Stats. The contested case hearing was held in March 1989.

The criteria for the determination of feasibility are set forth in sec. 144.44(2)(n), Stats. In August 1989, while this matter was pending before DNR, the legislature adopted sec. 144.44(4r), Stats., the so-called "bad actor statute," adding another criterion. Section 2379ag., 1989 Wis. Act 31. The bad actor statute provides that DNR cannot issue a favorable feasibility determination if certain circumstances apply to the applicant or any person owning a ten-percent or greater interest in the applicant (or its assets).[2] Section 144.44(4r).

---

[1] Today we release another case pertaining to the Libby site, *In re Madison Landfills, Inc. v. Libby Landfill Negotiating Comm.*, No. 92-1731.

[2] Section 144.44(4r), Stats., provides in relevant part:

The department must "issue a final determination of feasibility which shall state the findings of fact and conclusions of law upon which it is based." Section 144.44(2)(o), Stats. Issuance of a favorable final determination of feasibility constitutes approval of the facility for the purpose stated in the application. *Id.* Except for a facility that is otherwise exempt, the department must "issue a determination of need for the proposed facility at the same time the final determination of feasibility is issued." Section 144.44(2)(om), Stats.

On February 28, 1990, DNR issued a decision on MLI's feasibility report. The impact of this decision on each of the parties is critical to their petitions for ch. 227, Stats., review. In its decision, DNR determined that the proposed Libby landfill is needed, has the appropriate site life[3] and is environmentally feasible,

--------

(b)  The department may not issue a favorable determination of feasibility . . . for a solid waste disposal facility . . . if the applicant or any person owning a 10% or greater legal or equitable interest in the applicant or the assets of the applicant either:

1.  Is named in and subject to a plan approved . . . by the department regarding any solid . . . or hazardous waste facility in this state and is not in compliance with the terms of the plan. . .;
    or

2.  Owns or previously owned a 10% or greater legal or equitable interest in a person or the assets of a person who is named in and subject to a plan approved . . . by the department regarding any solid . . . or hazardous waste facility in this state and the person is not in compliance with the terms of the plan. . . .

(c)  Paragraph (b) does not apply if the person named in and subject to the plan. . . provides the department with proof of financial responsibility ensuring the availability of funds to comply with the plan . . . .

[3] Site life (or design capacity) is one of the sec. 144.44(2)(n), Stats., criteria we alluded to earlier. Under sec. 144.44(2)(n)4., Stats., DNR may not approve a feasibility report unless the new facility is designed to hold (1) more than the waste expected to

subject to certain conditions and exemptions. DNR made a "bad actor" finding as to Thomas DeBeck. It found he owned a ten-percent or greater legal or equitable interest in MLI or MLI's assets and a fifty-percent interest in Refuse Hideaway, Inc., and Refuse owned a landfill not in compliance with a DNR plan approval and had not provided DNR with proof of financial responsibility. The decision concludes with a "FINAL DETERMINATION" that DNR is "prohibited from issuing a favorable determination of feasibility . . . by section 144.44(4r)(b), Stats. [the bad actor statute]," and, "[f]or this reason the Feasibility Report is disapproved." DNR retained jurisdiction to modify "the foregoing determination."

On March 12, 1990, Dunn and WARF petitioned DNR for review and rehearing on its determinations of need and site life. DNR denied their request. On March 16 DeBeck and MLI executed an agreement intended to cure the conditions that DNR had held offended the bad actor statute. On March 19 MLI requested that the bad actor determination and several conditions imposed on environmental feasibility be modified, reheard or reopened. MLI's request for rehearing was made under sec. 227.49, Stats.[4] On March 27 DNR denied MLI's requests to rehear or reopen, including the requested rehearing on the bad actor issue, but remanded the bad actor issue to take testimony.

---

be disposed of at the facility within ten years after the facility begins operation and (2) no more than the waste expected to be disposed of at the facility within fifteen years after it begins operation.

[4] Section 227.49(3), Stats., provides that a petition for rehearing will be granted by the agency "only on the basis of" material error of law or fact, or the discovery of new evidence.

The next day, March 28, 1990, MLI filed a ch. 227, Stats., petition for judicial review of DNR's February 28, 1990 decision disapproving the feasibility report. MLI claimed the decision was based on an erroneous interpretation of the bad actor statute, and it challenged certain permit conditions and the decision to deny rehearing. On March 29 Dane County filed its petition for judicial review of the February 28 decision, and on March 30 Dunn and WARF filed their joint petition for review. The circuit court consolidated the three proceedings.

In June 1990 DNR again disapproved MLI's feasibility report because of the bad actor issue. In early July MLI and DeBeck took action to cure the problem, and MLI again requested modification or rehearing on the bad actor issue. On July 17, 1990, DNR remanded to again consider the issue.

On January 15, 1991, having determined that DeBeck no longer owned any interest in MLI or its assets, DNR granted MLI's modification request. It issued a decision stating that "the feasibility report . . . is approved as set forth in the Department's decision of February 28, 1990." Neither Dane County, Dunn, WARF nor MLI petitioned for review of the January 1991 decision. On February 15, 1991, the county filed a "supplementary pleading" to its March 1990 petition for review "reiterating its request for judicial review [of DNR's February 28, 1990 decision] . . . as modified January 15, 1991."

The circuit court dismissed Dane County's, Dunn's and WARF's petitions for review of the February 28, 1990 decision. The court held that each petitioner lacked standing to obtain review, and that DNR's January 15, 1991 decision mooted the February 1990 decision. Dane County, Dunn and WARF sought recon-

137

sideration and the court denied their motions. The court dismissed MLI's petition for review of the February decision because it was filed before DNR had finally disposed of MLI's March 19 petition for rehearing. MLI sought reconsideration and the court denied that motion.

## II. DECISION

The right to judicial review of an agency's decision is entirely statutory, and such decisions are not reviewable unless made so by statute. *Wisconsin's Envtl. Decade, Inc. v. Public Serv. Comm'n*, 93 Wis. 2d 650, 657, 287 N.W.2d 737, 741 (1980). DNR decisions are judicially reviewable as provided in ch. 227, Stats. Section 227.52, Stats.[5]

The elements of reviewability under ch. 227, Stats., of an administrative agency's decision are (1) a final decision, (2) made in writing accompanied by findings of fact and conclusions of law, (3) adversely affecting the substantial interest of any person and (4) review is sought by a person aggrieved by the decision.[6]

The finality element inheres in sec. 227.52, Stats. *Waste Management, Inc. v. DNR*, 128 Wis. 2d 59, 88,

---

[5] Section 227.52, Stats., makes all administrative decisions which adversely affect the substantial interests of any person subject to review as provided in ch. 227, Stats., except for the decisions of certain agencies. DNR is not an excepted agency.

[6] One who is aggrieved is also one who is injured. Injury is an element of standing. The test for standing is set out in *Waste Management, Inc. v. DNR*, 144 Wis. 2d 499, 504-05, 424 N.W.2d 685, 687 (1988) (citing *Wisconsin's Envtl. Decade, Inc. v. Public Serv. Comm'n*, 69 Wis. 2d 1, 10, 230 N.W.2d 243, 248 (1975)).

381 N.W.2d 318, 331 (1986). The *Waste Management* court held as to sec. 227.15, Stats. (1985), the predecessor of sec. 227.52, Stats.,[7] that the legislature did not intend to authorize the review of mere preliminary action by an agency. "Instead, the legislative intent was to limit judicial review of administrative agency actions to 'final orders' of the agency." *Id.*

Chapter 227, Stats., refers to "final" decisions or orders without defining "final."[8] The *Waste Management* court suggested one definition: an agency's final decision or order is action that determines the further legal rights of the person seeking judicial review. *Waste Management*, 128 Wis. 2d at 90, 381 N.W.2d at 332.[9]

The second element, a writing accompanied by findings of fact and conclusions of law, is expressly set forth in sec. 227.47, Stats.,: "Every proposed or final decision of an agency or hearing examiner following a hearing and every final decision of an agency shall be in writing accompanied by findings of fact and conclusions of law."

The third element, adversity, is express. Section 227.52, Stats., provides in part, "[a]dministrative decisions which adversely affect the substantial interests of any person, whether by action or inaction, whether affirmative or negative in form, are subject to review . . . ."

---

[7] Section 227.15, Stats., was renumbered sec. 227.52, Stats., by sec. 35, 1986 Wis. Act 182.

[8] *See* secs. 227.46(2), (3)(a), (4), (6) and (8); 227.47; 227.485 (5) and (6); and 227.49(1), Stats.

[9] We applied that definition when determining the finality of a Wisconsin Tax Appeals Commission's decision in *YMCA v. DNR*, 141 Wis. 2d 907, 911-13, 417 N.W.2d 39, 41-42 (Ct. App. 1987).

The fourth element, an aggrieved person, is also express. Section 227.53(1), Stats., provides: "Except as otherwise specifically provided by law, any person aggrieved by a decision specified in s. 227.52 shall be entitled to judicial review thereof as provided in this chapter." "Person aggrieved" is statutorily defined. It "means a person or agency whose substantial interests are adversely affected by a determination of an agency." Section 227.01(9), Stats.

We first employ these elements to determine the reviewability of DNR's February 28, 1990 decision on the ch. 227, Stats., petitions of the Town of Dunn, WARF and Dane County. The first element is satisfied. The decision was final as to Dunn, WARF and Dane County. They contested MLI's application for approval of its feasibility report. DNR's decision disapproving the feasibility report enforced whatever rights they sought to protect. The second element is satisfied. The decision is in writing and accompanied by findings of fact and conclusions of law. The third element, adversity as to any person, is satisfied. The decision adversely affected the substantial interest of at least one person, MLI. However, the decision fails to satisfy the fourth element. Neither Dunn, WARF nor Dane County were aggrieved by it. The decision did not adversely affect their substantial interests. On the contrary, it disapproved the feasibility report, and they deem disapproval essential to their interests.

Dunn, WARF and Dane County assert, however, that their substantial interests were adversely affected because in its February 28 decision, DNR made a favorable determination of need for the proposed landfill and various other favorable determinations with

respect to feasibility.[10] But those determinations did not adversely affect their interests. The feasibility report itself was disapproved. Because of that disapproval, the complained of determinations were for naught. They were useless to MLI and harmless to Dunn, WARF and Dane County.

■

We conclude that the Town of Dunn, WARF and Dane County are not entitled to judicial review of the decision of February 28, 1990. The circuit court properly dismissed their petitions for ch. 227, Stats., review of that decision.

■

Dane County asserts that its supplemental pleading filed in February 1991 relates back to its petition for review of the February 28, 1990 decision. Because sec. 802.09(3), Stats., allows amended pleadings which relate back, and because the rules of civil procedure that are not in conflict with the provisions of ch. 227, Stats., apply to ch. 227 review,[11] Dane County claims the right to review of DNR's final feasibility determination in January 1991. The relation back theory does not help Dane County. If the supplemental pleading relates back to the county's petition for review of the February 28, 1990 decision, Dane County is not a party aggrieved by that decision and is not entitled to petition for ch. 227 review of it. The relation back theory

---

[10] Whether Dunn, WARF or Dane County may have judicial review of those determinations when the circuit court decides the merits of MLI's petition for review of the February 28, 1990 decision is not before us. The question before us is whether Dunn, WARF and Dane County are entitled to petition for ch. 227, Stats., review of that decision. They are not.

[11] *State ex rel. Town of Delavan v. Circuit Court*, 167 Wis. 2d 719, 731, 482 N.W.2d 899, 904 (1992).

does not assist Dane County with respect to the January 1991 decision. Dane County failed to file a petition under ch. 227 to review that decision.

Alternatively, Dane County asserts that its supplemental pleading should be viewed as a permissive amendment of its petition for review, pursuant to sec. 802.09(4), Stats. It contends that the pleading incorporates the January 1991 decision into the pending petition for judicial review of the February 1990 decision. The amendment theory does not help Dane County. It was not aggrieved by the February 1990 decision. It is not entitled to review of that decision, and it never petitioned for ch. 227, Stats., review of the January 1991 decision. We conclude that the trial court properly dismissed Dane County's "supplemental pleading."

We turn to MLI's petition for ch. 227, Stats., review of DNR's February 28, 1990 decision. The decision satisfies all of the elements for judicial review as to MLI. It determines MLI's further legal rights concerning the proposed landfill. It is in writing. Without approval of the feasibility report, MLI's application for a license cannot be granted. Therefore, the decision satisfies the adversity element as to MLI. Because the decision affects MLI's substantial interest in ultimately obtaining a license, MLI is a person aggrieved by it.

The circuit court held that MLI's petition for review was premature because it was filed before DNR had finally disposed of MLI's March 19 petition for rehearing under sec. 227.49, Stats.[12] Section 227.53(1)(a)2., Stats., provides in relevant part: "If a

[12] A party need not petition for rehearing in order to seek judicial review. Section 227.49, Stats.

142

rehearing is requested under s. 227.49, any party desiring judicial review shall . . . file a petition for review within 30 days *after* service of the order *finally disposing of the application for rehearing* . . . ." (Emphasis added.) As we indicated earlier, on March 27 DNR denied MLI's requests to rehear or reopen, including the requested rehearing on the bad actor issue, but remanded the bad actor issue to take testimony. The circuit court held that DNR's March 27 order did not "finally dispose" of MLI's application for a rehearing, since the issue of DeBeck's ownership interest was still under consideration. It reasoned that MLI's application for rehearing was not finally disposed of until June 21, 1990, when DNR issued an order finding that the bad actor problem still existed. The court concluded that because MLI filed its petition for review on March 28, 1990 — before DNR resolved the bad actor issue — its petition was premature. We disagree.

DNR can grant a petition for rehearing only on the basis of a material error of law or fact, or the discovery of new evidence, sufficiently strong to reverse or modify the order, which could not have been previously discovered by due diligence. Section 227.49(3), Stats. In its March 27 order, DNR finds "no basis for granting the petition for rehearing . . . . Therefore, the petition for rehearing is denied." Because the order denied MLI's petition for rehearing, it finally disposed of the petition. MLI's petition for review is timely.

The circuit court ruled that even if MLI's petition for ch. 227, Stats., review is timely, the January 1991 decision mooted the February 1990 decision. We disagree.

143

A case is moot when a determination is sought which, when made, cannot have any practical effect upon an existing controversy. *City of Racine v. J-T Enters.*, 64 Wis. 2d 691, 700, 221 N.W.2d 869, 874 (1974). That DNR approved MLI's feasibility report in January 1991 does not moot the issues MLI raised in its petition for review of the February 28, 1990 decision.[13] In its February decision, DNR determined that (1) MLI's proposed landfill is environmentally feasible, subject to certain conditions, and (2) the department is prohibited from issuing a favorable determination of feasibility because of the bad actor provisions in sec. 144.44(4r)(b), Stats. In its petition for review, MLI challenges not only DNR's interpretation of the bad actor statute but also its decision to condition approval of feasibility upon installation of a synthetic membrane liner and cap layer, a three-foot thick sand drainage blanket, cleanout access to the leachate lines every 1,000 feet or less, the specified soil cone configuration and establishment of a fill limit if certain conditions exist. MLI's timely petition for judicial review of the February 1990 decision brought those issues before the circuit court. In order to obtain the January 1991 feasibility approval, MLI had to cure the bad actor problem and to agree to comply with the conditions that DNR imposed on environmental feasibility. But MLI's pending petition for review preserved its claim that DNR had erred with regard to the conditions and the bad actor statute. It is entitled to rulings on those issues. For that reason, the January decision approving MLI's feasibility report does not moot those issues.

---

[13] No party argues that MLI's subsequent compliance with the bad actor provision of DNR's February 1990 decision mooted the bad actor issue.

Nor was it necessary for MLI to petition for ch. 227, Stats., review of the January 1991 decision; MLI preserved its right to judicial review of the bad actor and the conditions issues when it timely petitioned for review of the February 1990 decision.

We conclude that the circuit court's orders dismissing MLI's petition for ch. 227, Stats., review of DNR's February 28, 1990 decision and MLI's motion to reconsider must be reversed as to MLI and remanded for further proceedings.

*By the Court.*—Orders affirmed in part and reversed in part and cause remanded.