Wisconsin DEPARTMENT OF REVENUE, Petitioner-Appellant,

v.

J. Gerard HOGAN, and Delores M. Hogan, et al., Respondents-Respondents.†

Court of Appeals

*No. 95–0438. Submitted on briefs November 10, 1995.—Decided December 21, 1995.*

(Also reported in 543 N.W.2d 825.)

†Petition to review denied.

796

For the petitioner-appellant the cause was submitted on the briefs of *James E. Doyle,* attorney general, with *F. Thomas Creeron III,* assistant attorney general.

For the respondents-respondents the cause was submitted on the brief of *Eugene O. Duffy* and *Gregory W. Lyons* of *O'Neil, Cannon & Hollman, S.C.,* of Milwaukee.

Before Eich, C.J., Gartzke, P.J., and Vergeront, J.

EICH, C.J. We hold in this case that the Wisconsin Tax Appeals Commission lacks authority to entertain a class-action proceeding seeking refunds of state income taxes collected on the pension income of retired federal government employees living in Wisconsin.

The appeal is from a judgment of the Dane County Circuit Court dismissing a petition by the Wisconsin Department of Revenue for judicial review of the commission's decision and order directing that refunds be paid to the class comprising all persons whose federal pensions had been taxed by the state. The court, ruling that the petition had not been filed within the time prescribed by statute, entered judgment dismissing the

review proceeding and remanded the case to the commission for implementation of its refund order.

We reverse the judgment and remand to the circuit court with directions to enter judgment reversing the commission's decision.

## I. Facts and Procedural History

The trial court aptly described this case as traveling a "tortured . . . journey" through the agencies and various courts.

The Hogans filed an attachment to their 1988 state income tax return indicating that they were paying the tax on their federal pensions under protest, citing the United States Supreme Court's decision in *Davis v. Michigan Dep't of Treasury*, 489 U.S. 803 (1989). *Davis* held that state taxation of federal retirement income violated federal law and principles of intergovernmental tax immunity. *Id*. at 817. The Hogans subsequently filed a refund claim for tax years 1985 through 1988.

Several months after they filed their individual refund claim, the Hogans and several other federal retirees living in Wisconsin commenced a class action in circuit court under 42 U.S.C. § 1983, claiming, as they did in their case before the department, that the *Davis* decision entitled them to a refund of state income taxes collected on their federal retirement benefits over the years. They also sought damages for "money had and received" under state law.

The circuit court issued an order certifying the class and enjoining the department from taxing any of the plaintiffs' retirement benefits pending trial on the merits of their claims. The supreme court reversed, dismissing the plaintiffs' action on grounds that they had failed to exhaust their state administrative remedies before proceeding in court under § 1983. *Hogan v.*

*Musolf,* 163 Wis. 2d 1, 26-27, 471 N.W.2d 216, 226 (1991), *cert. denied,* 502 U.S. 1030 (1992).[1]

In early 1991, while *Hogan* was still pending in the circuit court, the Hogans wrote to the department stating that they were changing their individual refund claim to one seeking refunds on behalf of the class certified by the circuit court in *Hogan.*[2] The department denied the purported "amendment," concluding that state law did not authorize the prosecution of class-action refund claims before the department. The denial was appealed to the department's appellate bureau, where it was confirmed.

The Hogans then appealed the bureau's denial to the tax appeals commission. The department moved to dismiss the appeal, and the Hogans moved for an order "recognizing the class as certified in *Hogan*[ ] . . . and directing that th[e] case continue [before the commission] as a class action . . . ."

On October 28, 1992, the commission denied the department's motion to dismiss and granted the Hogans' motion to recognize and certify the class. The order was not accompanied by the notice of appeal rights specified in § 227.48(2), STATS., as a precondition for commencing the time limits in which petitions for

[1] In 1989, the legislature added payments from federal civil service and military retirement systems to the list of retirement benefits exempt from income taxation under § 71.05(1), STATS., 1989 Wis. Act 31, § 1817m. The law did not affect the liability of federal retirees for pre-1989 taxes, however.

[2] In their brief, the Hogans estimate the class at something in excess of 25,000 persons, including over 20,000 retired civilian employees and survivor annuitants of deceased retirees, and over 5,000 military retirees.

rehearing or judicial review may be commenced.[3] Thereafter, the commission clarified its class-certification order and then clarified it again, each time modifying and altering the underlying rationale. Like the October 28 order, none of the amended orders was accompanied by a § 227.48(2) notice.

On November 20, 1992, the department filed a "Respondent's Rehearing Petition" with the commission. The commission treated the petition as a motion for reconsideration and denied it in a lengthy decision restating its earlier conclusion that it possessed statutory authority to certify a class and entertain a class refund proceeding. The order dismissing the department's motion was also unaccompanied by a § 227.48(2), STATS., notice.

The Hogans moved the commission for summary judgment on behalf of the class on the merits of their claim, seeking a determination that all class members were entitled to refunds. On May 27, 1993, Commissioner Thomas Timken rendered an oral decision

---

[3] Section 227.48(2), STATS., provides that agency decisions "shall include" a notice of the right to petition for rehearing and judicial review and that the time limitations for filing rehearing petitions under § 227.49(1), STATS., or petitions for judicial review under § 227.53(1)(a), STATS., do not begin to run "until the agency has complied with this subsection."

Section 227.49(1), STATS., states that a party aggrieved by a final agency order may petition for rehearing within twenty days after service of the order. Section 227.53(1)(a)2, STATS., provides that, where no rehearing petition is filed, an aggrieved party must file a petition for judicial review of the order within thirty days after service of the order and that "[i]f a rehearing is requested under s. 227.49, any party desiring judicial review shall serve and file a petition for review within 30 days after service of the order finally disposing of the application for rehearing . . . ."

granting the motion and ordering refunds to all members of the class, together with statutory interest.[4] Unlike all the decisions preceding it, the transcript of the Timken decision provided to the parties was accompanied by the § 227.48(2), STATS., notice.

On June 16, 1993, twenty days after the oral decision, the department filed a petition for rehearing.[5] Timken denied the petition in a written decision issued on June 29, 1993, and the department filed a petition for judicial review within thirty days of that date.

The circuit court ruled that the department's petition for judicial review of the Timken decision was untimely because it was not filed within thirty days of the date the decision was rendered. The court rejected the department's argument that because it had petitioned for rehearing, the thirty-day limit was extended

---

[4] By this time, Timken was the sole member of the commission remaining on the case, all others having either recused themselves or left the commission in the interim.

Timken proceeded to decide the motion under § 73.01(4) (dn), STATS., which authorizes any member of the commission, with the consent of the parties, to render an oral decision in any matter pending before the agency, and provides:

> Any party may appeal such oral decision as provided in s. 73.015. Oral decisions constitute notice for purposes of determining the time in which appeals may be taken. Provisions of this section ch. 227 in conflict with this paragraph do not apply to decisions rendered under this paragraph.

Section 73.015, STATS., referred to in the statute, states simply that "[a]ny adverse determination of the tax appeals commission is subject to review in the manner provided in ch. 227."

[5] The Hogans contend that the June 16th filing was ineffective because the other parties were not served until the 17th, which was one day beyond the thirty-day deadline. As will be seen below, we reject that argument.

under § 227.53(1)(a), STATS.,[6] concluding the oral-decision statute under which Timken proceeded, § 73.01(4)(dn), STATS., did not conteplate petitions for rehearing. The court affirmed Timken's decision and this appeal followed. (Other facts will be referred to in the body of the opinion.)

## II. Timeliness of the Petition for Judicial Review

The trial court's decision that the department's petition for judicial review was not timely filed involves the application of statutory and other legal principles to the facts of the case. It is a question of law, which we decide de novo. *See Braatz v. LIRC*, 174 Wis. 2d 286, 293, 496 N.W.2d 597, 600 (1993).

The Hogans' arguments on the question are based on the department's failure to seek judicial review of the commission's October 28, 1992, decision denying the department's motion to dismiss the appeal and granting the Hogans' motion for certification of the class. They point out that the department's petition for rehearing of that decision was denied on February 16, 1993, and no appeal was taken within thirty days thereafter. According to the Hogans, this failure deprives the circuit court of competency to hear any challenge to the commission's decision to entertain the class-action refund proceeding.

The department argues, on the other hand, that the class-certification order was not final but interlocutory in nature, and thus was not an "administrative decision[ ] which adversely affect[ed] the substantial interests of [the department]" within the meaning of

---

[6] *See supra* note 3.

§ 227.52, STATS., the statute governing judicial review of agency actions.[7]

It is well settled that "not all decisions, orders or determinations which might fit within a literal reading of [§ 227.52, STATS.,] are subject to judicial review." *Friends of the Earth v. Public Serv. Comm'n,* 78 Wis. 2d 388, 404, 254 N.W.2d 299, 305 (1977). Nor does the form of the order, or the label the agency happens to place upon it, determine whether it starts the thirty-day clock ticking. *YMCA of Beloit v. DOR,* 141 Wis. 2d 907, 911, 417 N.W.2d 39, 41 (Ct. App. 1987). An appealable agency decision under § 227.52, STATS.—one "adversely affect[ing] the substantial interests of any [party]"—is one that is "final and complete" in the sense that it " 'determine[s] the further legal rights of the [party] seeking review.' " *Id.* at 910, 912, 417 N.W.2d at 41 (quoted source omitted).

> [T]he legislature did not intend to authorize the review of mere preliminary action by an agency. "Instead, the legislative intent [underlying § 227.52, STATS.] was to limit judicial review of administrative agency actions to 'final orders' of the agency."

*Madison Landfills, Inc. v. DNR,* 180 Wis. 2d 129, 139, 509 N.W.2d 300, 304 (Ct. App. 1993) (quoted source omitted).

A preliminary or interlocutory order—one that does *not* start the clock running—is an order "whe[re]

---

[7] Section 227.52, STATS., states, "Administrative decisions which adversely affect the substantial interests of any person, whether by action or inaction, whether affirmative or negative in form, are subject to review as provided in this chapter . . . ."

the substantial rights of the parties involved in the action remain undetermined and whe[re] the cause is retained for further action." *Pasch v. DOR*, 58 Wis. 2d 346, 354, 206 N.W.2d 157, 161 (1973) (footnote omitted).

> " 'Courts are averse to review interim steps in an administrative proceeding. . . . [R]eview of preliminary or procedural orders is generally not available, primarily on the ground that such a review would afford opportunity for constant delays in the course of administrative proceedings for the purpose of reviewing mere procedural requirements or interlocutory directions. Broad language of statutes providing for judicial review of orders of regulatory commissions has been construed as not extending to every order which the commission may make, and mere preliminary or procedural, as distinguished from final, orders have been held not to be within such statutes, especially where the context of the provision indicates that the orders for which review is provided are such as are of a definitive character dealing with the merits of a proceeding . . . .' "

*Id.* at 354-55, 206 N.W.2d at 161 (quoting *Wisconsin Tel. Co. v. Wisconsin Employment Relations Bd.*, 253 Wis. 584, 591, 34 N.W.2d 844, 847 (1948)) (internal quoted source omitted).

In *Pasch*, the appeal was from "an order which determined that the commission had the authority to proceed to a hearing and determination upon the merits," *id.* at 355, 206 N.W.2d at 162, and the court held that such an order was not reviewable under ch. 227:

> The order of the commission finding jurisdiction . . . to proceed to a hearing upon merits of the controversy does not directly affect the legal rights, duties

or privileges of the appellant. As provided in sec. [227.52, STATS.] the jurisdiction of the commission may be challenged upon review from the final decision of the commission upon the merits of the controversy. Appellant argues that the issue of the commission's jurisdiction should be finally determined before appellant is put to the expense and inconvenience of a lengthy proceeding before the commission . . . . We are mindful of the fact that much time and expense might be saved if the courts would decide at this time that the commission had exceeded its jurisdiction; however, this consideration is outweighed by the resultant delay that would accompany review of these agency determinations and the disruption of the agency's orderly process of adjudication in reaching its ultimate determination.

*Id.* at 357, 206 N.W.2d at 162-63.

██

The Hogans have not persuaded us that the commission's order purporting to certify the class is a final, appealable order within the meaning of § 227.52, STATS., and the applicable cases. Rather, we see it as a decision to continue with the proceedings—as a class action—to a determination of the merits of the controversy: whether, and in what amount, refunds are to be paid to the applicants. And the fact that the commission certified the class does not necessarily determine the entitlement to specific refunds. In our view, the October 28, 1992, order is much more akin to the type of "jurisdictional" order the *Pasch* court held to be interlocutory in nature and thus not appealable under ch. 227, STATS. And we note in this regard that the commission did not include with its decision the appeal-rights notice under § 227.48(2), STATS., see *supra* note 3, and, further, that the order itself set "[a]

scheduling conference for further proceedings" in the case.[8]

On the other hand, the Timken oral decision of May 27, 1993, which held that the state had illegally collected income taxes on class members' federal pensions over the years and granted the Hogans' motion for judgment ordering refunds to the class, is unquestionably a final, appealable order under § 227.52, STATS., and there is no question that the department's petition for review of the Timken decision was filed within thirty days of the commission's denial of its petition for rehearing of that decision.

The Hogans argue that we should nonetheless consider the petition untimely for two reasons: first, because the petition for rehearing itself was not "properly" filed within twenty days of the decision and thus was a nullity which cannot toll the thirty-day requirement for filing a petition for review;[9] and, second,

---

[8] It is instructive that, in the federal courts, orders granting certification are not considered final "in part because every certification is subject to continuing reconsideration up to the time of final judgment." 15B WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCEDURE, § 3914.19, at 63 (1992).

Finally, we note that in their arguments on the merits of the commission's authority to certify a class, the Hogans themselves argue that class certification " 'is a *procedural right only*, ancillary to the litigation of substantive claims' " (quoting *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 345 (1980) (Powell, J., dissenting) (emphasis the Hogans'), and also citing *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 912-13 (9th Cir. 1964)).

[9] As noted *supra* note 3, § 227.53(1)(a)2, STATS., requires petitions for review to be filed within thirty days after service of the agency decision, unless rehearing is requested under § 227.49, STATS.—in which case the petition for review must be filed within thirty days of the decision disposing of the rehear-

806

because the oral-decision provisions of § 73.01(4)(dn), STATS., do not permit petitions for rehearing.

As for the first, the Hogans contend that the rehearing petition "was not properly served or filed until June 17, 1993—one day after the last date for filing and service." As we have noted above, the record establishes that the petition was filed on June 16, 1993—twenty days from the date of the Timken oral decision. The Hogans argue, however, that the petition was not "properly" filed on that date because, contrary to the requirements of § 227.49(4), STATS., the department did not serve copies on counsel for the class until the following day, which, as indicated above, was the twenty-first day.

Section 227.49(4), STATS., does not require that, in addition to filing the petition within twenty days, it must also be served on the other parties to the proceeding within that time. All the statute says is that: (1) the person or entity seeking rehearing "may, within 20 days after service of the order, file a . . . petition for rehearing"; and (2) in a separate subsection, "[c]opies of petitions for rehearing shall be served on all parties of record." Section 227.49(1) and (4), STATS.

■

The Hogans offer no authority for the proposition that a petition properly filed with the commission within the twenty-day time limit must be considered a nullity under § 227.49, STATS., if service on the parties of record is not also completed by the twentieth day. As the department points out, when the legislature has intended such a result, it has plainly stated that intent in the statute itself. The provisions dealing with service and filing of petitions for judicial review, for

---

ing application. And § 227.49(1) requires a petition for rehearing to be filed within twenty days of the decision.

example, expressly state that the petition "shall be *served and filed* within 30 days" of the decision sought to be reviewed. Section 227.53(1)(a)2, STATS., (emphasis added). The Hogans do not explain why, if the legislature had intended to impose a similar requirement in § 227.49, it did not say so, and they have not persuaded us that the department's rehearing petition was not timely filed.

WAs for their argument that, as the circuit court ruled, the rehearing petition cannot toll the thirty-day limit for petitions for review because rehearings are not permitted by § 73.01(4)(dn), STATS., they have offered no authority to support the proposition, other than the unamplified statement that the statute "*expressly* precludes petitions for reconsideration of oral decisions" (emphasis the Hogans') and a brief quotation from the trial court's decision so concluding.

We have referred to § 73.01(4)(dn), STATS., see *supra* note 4. It states that an oral decision may be appealed as provided in ch. 227; that the decision itself constitutes notice for determining applicable time periods "in which appeals may be taken"; and that other provisions of § 73.01 or ch. 227 "in conflict with this paragraph" do not apply to such an oral decision.

Contrary to the Hogans' assertion, we see nothing in the statute "expressly" prohibiting petitions to rehear an oral decision.[10] We think it would indeed be

---

[10] We do not agree that the statement in the statute that other provisions of ch. 227 that are "in conflict" with § 73.01(4) (dn), STATS., are inapplicable may be considered an "express" bar to rehearing petitions simply because such petitions are authorized elsewhere in ch. 227. As we discuss in greater detail below, we see no "conflict" between the oral-hearing provisions of § 73.01(4)(dn) and the rehearing provisions of § 227.49, STATS. Indeed, as may be seen, we see them as complementary.

poor policy to bar rehearing or reconsideration of agency decisions merely because they are rendered orally, rather than in writing.

The purpose of a rehearing is to enable the agency to correct any errors in the proceedings before the case goes any further in the adjudicative process. *Village of Cobb v. Public Serv. Comm'n*, 12 Wis. 2d 441, 458, 107 N.W.2d 595, 604 (1961). We agree with the department that to hold that rehearing requests are not permitted where the decision is rendered orally under § 73.01(4)(dn) would render the commission powerless to correct mistakes made in a single-commissioner proceeding at the request of one of the parties. Denying the parties the opportunity to ask the agency to correct claimed errors in its decision, and requiring them instead to sue in circuit court, would be contrary to the goals of judicial economy and the efficient resolution of tax disputes.

In *Metropolitan Greyhound Management Corp. v. Racing Bd.*, 157 Wis. 2d 678, 460 N.W.2d 802 (Ct. App. 1990), we rejected the argument that a circuit court lacks the authority to reconsider its decision in a judicial review proceeding after the decision has been appealed. We reasoned as follows:

> Motions for reconsideration pending appeal serve an important function. First, a trial court's reconsideration may obviate the necessity for an appeal. If so, the parties are not only spared unnecessary expense, but the interests of judicial economy are served as well. Second, even if an appeal is not avoided, a motion for reconsideration that challenges the trial court's decision can hone its analysis, and thus assist appellate review. There is nothing in the law or in logic that persuades us of

an intent to exclude judicial review of administrative agency determinations from these benefits.

*Id.* at 698-99, 460 N.W.2d at 811. We think that reasoning is equally applicable here.

■

Finally, we note that the commission itself advised the parties that they had a right to petition for rehearing of the Timken decision.[11] And, once the petition was filed, the commission proceeded to consider and decide it. In light of these considerations, we find unpersuasive the Hogans' argument that rehearing petitions are not permitted in oral dispositions under § 73.01(4)(dn), STATS.

We therefore reverse the trial court's ruling that the department's petition for review was untimely filed.[12]

---

[11] The notice of appeal rights accompanying the Timken decision, in addition to informing the parties of their right to seek judicial review, also states that "[a]ny party has a right to petition for a rehearing of this decision within 20 days . . . ."

[12] The Hogans also argue that the department should be estopped from petitioning for review of the May 27, 1993, Timken decision (or, more properly, from the denial of its petition for rehearing of that decision), because it had also sought rehearing of the commission's October 28, 1992, decision certifying the class. According to the Hogans, a petition for rehearing under § 227.49(1), STATS.—which states that "[a]ny person aggrieved by a final [agency] order" may petition for rehearing—assumes the finality, and thus the appealability, of the order. They see such action as inconsistent with the position the department now takes—that is, that the 1992 decision was not a final order for purposes of a ch. 227 review proceeding—and they claim that the department should be prohibited from so arguing under the rule of judicial estoppel.

Judicial estoppel is "an equitable remedy" which "precludes a party from asserting a position in a legal proceeding that is

### III. The Commission's Authority to Certify the Class

Because the circuit court dismissed the department's petition for lack of subject matter jurisdiction (competency to proceed), based on its conclusion that the petition for review had not been timely filed, the court did not consider whether, as a matter of law, the commission has the authority to certify and entertain a class action in refund proceedings. Pointing to the statement in § 227.58, STATS., that, on appeal from the circuit court's judicial review of an agency decision, the court of appeals "review[s] . . . the final judgment of the circuit court," the department argues that we may not consider the issue because it was not encompassed in the court's judgment.

The extent of the commission's statutory authority is a question of law, and legal issues are generally reviewed de novo on appeal. *Debeck v. DNR*, 172 Wis. 2d 382, 386, 493 N.W.2d 234, 236 (Ct. App. 1992).

---

inconsistent with a position previously asserted." *Coconate v. Schwanz*, 165 Wis. 2d 226, 231, 477 N.W.2d 74, 75 (Ct. App. 1991). The rule, however, applies only in situations where the challenged actions constitute "cold[ ] manipulat[ion]," rather than mistake or inadvertence. *State v. Fleming*, 181 Wis. 2d 546, 558, 510 N.W.2d 837, 841 (Ct. App. 1993). By its 1992 rehearing petition, the department was essentially seeking reconsideration of the commission's interlocutory ruling on class certification, and even if it could be considered that the motion, or its title, had great legal significance, we have been provided with no evidence that the department's description of its motion as one for "rehearing under sec. 227.49" was anything other than inadvertent, much less the result of "cold[ ] manipulat[ion]." Indeed, the commission treated the motion as one for reconsideration, titling its decision: "Ruling and Order on Motion for Reconsideration."

Because we review the legal basis for the commission's decision independently, and because the parties have fully briefed the issue, we proceed to decide it.

In concluding that it had authority to certify a class on the Hogans' appeal, and to proceed with the appeal as a class action, the commission reasoned as follows: (1) Section 73.01(4)(b), STATS., provides that commission proceedings "shall be conducted in accordance with rules of practice and procedure prescribed by the commission"; (2) one such rule prescribed by the commission is WIS. ADM. CODE § TA 1.39, which states that "the practice and procedures before the commission shall substantially follow the practice and procedures before the circuit courts of this state"; and (3) because the statutes and rules applicable to circuit courts include provisions for certification of class actions, the commission has authority to do the same in refund proceedings. The department argues that such a conclusion is without legal foundation.

As a preliminary matter, the parties dispute whether, and if so to what extent, we should defer to the commission's resolution of this legal issue. The Hogans argue that the commission's decision is entitled to "controlling weight" because it involves the construction and interpretation of its own rules. *See Pfeiffer v. Board of Regents*, 110 Wis. 2d 146, 154-55, 328 N.W.2d 279, 283 (1983) (agency's interpretation of its own regulations entitled to controlling weight unless inconsistent with the language of the regulation or clearly erroneous). The *Pfeiffer* rule is based on the following rationale:

> An administrative agency knows the specific purposes of the regulations it has promulgated. Moreover, an agency has a certain expertise in the

> area it is called upon to regulate. Thus we believe that an agency is in the best position to interpret its own regulations in accordance with their underlying purposes. For this reason, in construing such regulations, we ordinarily defer to the adopting agency's interpretation.

*Id.* at 155, 328 N.W.2d at 283.

The commission's decision, however, is much more than a simple interpretation of one of its procedural rules. The jump from an administrative rule stating that the commission will "substantially follow" circuit court procedures to a decision that the rule permits the commission to entertain class-action refund claims—in the face of other statutes and rules which, as we discuss below, suggest quite the contrary—is, in our view, inconsistent with the principles underlying the *Pfeiffer* rule.

Nor does it appear from the record that the commission has considered or ruled in the past that, in light of the statutes governing tax refund proceedings before the commission and the department, it has the authority to either certify a class or permit counsel for an individual refund claimant to file or prosecute a class refund claim in an appeal from a ruling of the department. Indeed, as the department points out, the fact that the commission, acting *sua sponte*, issued, then modified, then modified yet again, its decision on the class certification, changing its rationale each time, suggests that the question was indeed one of first impression before the agency.[13]

---

[13] The department has also referred us to two earlier decisions where the commission refused to permit the pursuit of relief by the taxpayer on behalf of anyone but the taxpayer him- or herself. *See Stege v. DOR*, Docket No. PTR-6740, 11 WTAC

■

We said in *Amsoil, Inc. v. LIRC*, 173 Wis. 2d 154, 165, 496 N.W.2d 150, 154 (Ct. App. 1992), that, while we will generally pay some deference to an administrative agency's construction of a statute where the agency has "special expertise and experience" in interpreting the statute, we will not do so when the agency decision involves "novel questions of statutory interpretation that the agency has not previously addressed . . . ." That is so because judicial deference to an administrative decision is based on the agency's "uniform interpretation [of the statute] over a period of time." *Id.* It is also true, of course, that an agency's decision dealing with the interpretation and scope of its own powers is not binding on the courts. *Id.* We conclude that the commission's ruling in this case is reviewable de novo on this appeal.[14]

---

81, Wis. Tax Rep. (CCH) ¶ 201-729 (Sept. 16, 1980); *Morrissey v. DOR,* Docket No. I-8189 (Apr. 1, 1981).

[14] The Hogans contend that our review need not go further than *Hogan v. Musolf,* 163 Wis. 2d 1, 471 N.W.2d 216 (1991), *cert. denied,* 502 U.S. 1030 (1992), which they suggest establishes the validity of the class as a matter of law. We disagree. *Hogan* was a 42 U.S.C. § 1983 class action filed by the Hogans in circuit court raising, among others, the same arguments they are advancing here. The primary issue in *Hogan* was whether the plaintiffs had to exhaust their administrative remedies before pursuing relief in circuit court under § 1983. An ancillary issue had to do with intergovernmental immunity claims under 4 U.S.C. § 111, which preserves federal employees' immunity from discriminatory state taxation.

The Hogans base their argument on the supreme court's statement in the opinion that the action must be dismissed because "[t]he plaintiffs have a plain, adequate, and complete [administrative] remedy" which must be pursued before coming to court under § 1983. *Hogan,* 163 Wis. 2d at 27, 471 N.W.2d at

Claims for tax refunds are governed by § 71.75, STATS. Indeed, § 71.75(1) states that, with certain exceptions not relevant here, "the provisions for refunds and credits provided in this section shall be *the only method* for the filing and review of claims for refund of income [taxes]" and that "no person may bring any action or proceeding for the recovery of such taxes other than as provided in this section." (Emphasis added.)

The income tax refund process involves both the department of revenue and the tax appeals commission. The process begins in the department which, under the law, is the agency exercising "general supervision over the administration of the . . . tax laws of the state." Section 73.03(1), STATS. The commission, on the other hand, exercises primarily appellate authority. A taxpayer aggrieved by the department's denial of a claim for tax refund "may appeal to the tax appeals commission," § 71.88(1) and (2), STATS., and the commission is authorized to hear and decide the cases so appealed as "the final authority for the hearing and determination of all questions of law and fact" with respect to the issues properly brought before it. Section 73.01(4)(a) and (e), STATS.

The commission's class-action rulings in this case contravene two specific and plainly worded statutes. The first is § 71.75, STATS., which sets forth the requirements for filing and processing refund claims before the department. Section 71.75(6) mandates that "[e]very claim for refund" must be filed with the depart-

---

226. On its face, however, the statement does not bear in any way upon the tax appeals commission's authority to certify a class and entertain a class refund proceeding. The issue was not before the court in any guise, and the Hogans' argument on the point is unavailing.

ment "in the manner, and on a form . . . signed by the person . . . who filed the return on which the claim is based." By permitting the Hogans to change their appeal from one based on their individual returns to one representing a class of more than 25,000 other taxpayers, many of whom have never filed their own claims with the department, would effectively nullify the provisions of § 71.75(6) as to those taxpayers.

Second, the statutes dealing with the commission's appellate jurisdiction expressly state that, in order to prosecute an appeal from the department's assessment of a tax, the taxpayer must, among other things, testify under oath before the commission as to his or her actual income. Section 71.89(2), STATS. This provision, too, would be nullified if the commission could add thousands of "absent" parties to the proceeding by permitting the Hogans' individual appeal to proceed as a class action.

Few principles of law are as well established as the proposition that administrative agencies, as entities created by the legislature as part of the executive branch of government, have only such powers as are expressly granted to them by the legislature, or as may be necessarily implied from the applicable statutes. *The Avenue, Inc. v. La Follette*, 183 Wis. 2d 409, 415, 515 N.W.2d 339, 342 (Ct. App. 1994). In determining the nature and scope of an agency's powers, its enabling statutes are to be "strictly construed to preclude the exercise of a power not expressly granted," and "[a]ny reasonable doubt as to the existence of an implied power should be resolved against [the agency]." *State Public Intervenor v. DNR*, 177 Wis. 2d 666, 671, 503 N.W.2d 305, 308 (Ct. App. 1993), *rev'd on other*

*grounds*, 184 Wis. 2d 407, 515 N.W.2d 897 (1994) (citation omitted).

However broad its appellate jurisdiction, the statute authorizing the commission to establish its own "rules of practice and procedure" cannot, in our opinion, be reasonably construed to empower the commission to permit an individual taxpayer, in an appeal from an adverse ruling of the department on his or her individual refund claim, to undertake to represent a class of thousands of other taxpayers in the appeal proceedings. For the commission to do so would contravene—if not nullify—the plainly worded and mandatory statutes prescribing refund procedures before both the department and the commission itself, for it would permit the addition of thousands of parties and claims never processed before the department as required by § 71.75(1) and (6), STATS., and would effectively nullify the personal-appearance requirements of § 71.89(2), STATS., dealing with procedure before the commission. We do not see the commission's statutory powers as permitting it to add so greatly to its own jurisdiction—much less to negate statutes and rules governing procedures before another agency.

Undoubtedly, a class-action procedure before the commission—at least in extraordinary cases such as this one—would greatly benefit the taxpayers by relieving them from making individual application for the refunds. Because, under well-established principles of law, we cannot expand the commission's authority beyond that granted by the legislature, any such relief will have to come from that body. Accordingly, we remand to the circuit court with directions to

817

enter an order reversing the summary judgment issued by the tax appeals commission on May 27, 1993.

*By the Court.*—Judgment reversed and cause remanded with directions.

GARTZKE, P.J. (*concurring*). We have held that the Hogans and their fellow plaintiffs have failed in their effort to pursue the class action route. We have reached the correct but perhaps an unjust result. Our decision means that federal retirees whose federal pensions have been unconstitutionally taxed by Wisconsin must individually seek refunds under § 71.75, STATS. Section 71.75(2) provides in pertinent part, "With respect to income taxes . . ., refunds may be made if the claim therefor is filed within 4 years of the unextended date under this section on which the tax return was due."

The Hogans tell us that when this proceeding commenced in April 1989 over 20,000 retired civilian employees of the federal government and survival annuitants of such deceased retirees, and 5,000 military retirees were subjected to Wisconsin's unlawful tax. The Hogans assert members of the class also made additional filings with the department of justice, the legislature, the department of revenue and the claims board to supplement, amend and perfect the class members' entitlement to full relief.

Moreover, we are told that many class members are elderly citizens who live on fixed incomes and have limited financial resources, several have been legally incompetent since this case began and others are physically incapable of indicating their rights. We are told that many class members died during the first year of this proceeding and the rate of death is increasing dra-

818

matically. We are told that many class members, due to their age and circumstances, require assistance to perfect their claims but cannot afford to pay the cost of preparing an amended return. In other cases, the cost of preparing an amended return equals or exceeds the refund due.

Our decision may thus result in persons otherwise entitled to refunds losing their rights because they have relied on this class action and it is too late, expensive or inconvenient for them to file individual claims for a refund. That result is unjust. Persons whose property has effectively been taken by an unlawful tax should not be penalized because they relied on what seemed a reasonable attempt to obtain their refunds through a class action. If they will be penalized, then the legislature should consider protecting those persons by extending the time to file their claims for refunds and perhaps directing the department of revenue to assist them in processing their claims.

I am authorized to state that Judges Eich and Vergeront join this concurring opinion.